**Iris GRIFFIN and Ralph Griffin, Appellants,**

v.

**CENTRAL SPRINKLER CORPORATION and Edward J. Meehan, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 7, 2003.

Filed April 25, 2003.

Howard N. Snitow, Philadelphia, for appellants.

John J. Hatzell, Philadelphia, for appellees.

Before: KLEIN, BENDER and CAVANAUGH, JJ.

BENDER, J.

¶ 1 This is an appeal from an order granting summary judgment in favor of Appellees. Appellants set forth three questions in their statement of questions involved. For purposes of clarification, we restate the two issues relevant to our review as follows: (1) where Appellant's praecipe for writ of summons was time-stamped at 8:31 a.m. the day after the statute of limitations expired, was sum-mary judgment properly granted based upon the defense of limitations; (2) did/ does the principle or *res judicata* apply to render decided the statute of limitations question where Appellants did not file an appeal from an order denying their petition to backdate the writ of summons, and an order denying reconsideration of the same? We vacate and remand.

¶ 2 The present controversy stems from a motor vehicle collision between a vehicle driven by Appellee, Edward Meehan, an employee of Appellee Central Sprinkler Corp., and one driven by Appellant, Iris Griffin, on April 18, 1997. As the two-year period for filing a civil action was nearing expiration, and after settlement negotiations were at an apparent impasse, Appellants instituted the present action by mailing a praecipe for writ of summons to the Montgomery County Prothonotary's Office. The praecipe was dated April 13, 1999, but was not time-stamped by the prothonotary's office until 8:31 a.m., April 20, 1999.

¶ 3 Subsequently, on June 21, 2000, Appellants' counsel filed a petition to backdate the praecipe. Attached to the petition was an affidavit of Denise Dougherty which asserted that Ms. Dougherty was employed as a paralegal in the office of Appellants' attorney, Howard Snitow, esq., and that she personally placed the praecipe for writ of summons in the mail, along with four copies and a self-addressed stamped envelope, on April 13, 1999. Ms. Dougherty further asserted in her affidavit that upon receiving the time-stamped copy of the praecipe she called the prothonotary's office on April 26, 1999, and spoke with Joe Giannetti, First Deputy Prothonotary of Montgomery County, regarding the time-stamped date. According to Ms. Dougherty, Mr. Giannetti informed her that the prothonotary's office had been backed up and that they were just starting

to work on material received on Friday, April 23, 1999. Additionally, Ms. Dougherty's affidavit asserted that when informed that Appellants' praecipe had not been stamped until April 20th, a week after being mailed, Mr. Giannetti seemed surprised and advised Ms. Dougherty that their office could file a petition to backdate the summons based upon good faith.

¶ 4 In furtherance of the petition to backdate, Appellants deposed Joseph Giannetti on August 3, 2001. Mr. Giannetti provided valuable information as to the workings of the prothonotary's office[1] and admitted that the time-stamp in question did not necessarily indicate that the praecipe had arrived on the 20th. Nevertheless, despite the assertions in the affidavit and Mr. Giannetti's testimony, Appellants' petition was dismissed on May 1, 2001. The order states that the petition was dismissed for a failure to file a supporting brief. Appellants responded by filing a motion to reconsider. However, that motion was denied on June 15, 2001. Subsequently, on November 7, 2001, Appellees filed a motion for summary judgment seeking the entry of judgment in their favor due to, *inter alia*, the untimeliness of the action. On June 9, 2002, the court granted summary judgment based upon "res judicata." The present appeal followed.

¶ 5 In the present case, the court concluded that:

summary judgment was appropriate due to the *res judicata* effect of our May 1, 2001, and June 15, 2001, orders declaring the statute of limitations to have run. Appellants failed to file an appeal from either the May 1, 2001, Petition to Backdate or the June 15, 2001, Petition to Reconsider. Therefore, the statute of limitations issue was properly deemed closed, leaving no outstanding issues of material fact to withstand the motion for Summary Judgment.

Trial Court Opinion, at 3. Initially, it is unclear whether the court is relying upon the claim preclusion aspect of *res judicata*, or the issue preclusion aspect of *res judicata*, otherwise known as collateral estoppel. However, it does not matter, as reliance upon either theory is erroneous.

¶ 6 The claim preclusion aspect of *res judicata* provides that once a claim has been litigated to a final conclusion, it cannot be pursued in a subsequent proceeding. *Balent v. City of Wilkes–Barre*, 542 Pa. 555, 669 A.2d 309 (1995).[2] However, the operable terms in this description are "claim" and "final conclusion." The doctrine would not be applicable here unless Appellants' claim for personal injuries had been previously litigated to conclusion. Clearly this was not the case, as the entry of summary judgment in Appellees' favor represented the first conclusive order disposing of Appellants' claim, and that order has been timely appealed. To the extent the trial court suggests that its orders denying the petition to backdate the praecipe and the denial of the motion for recon-

---

1. Mr. Giannetti's testimony will be set forth in greater detail later in this Opinion.

2. The Pennsylvania Supreme Court describes *res judicata* thusly:

   *Res judicata*, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). *Res judicata* applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action. *Id. Balent*, 669 A.2d at 313.

sideration were "final orders" disposing of Appellant's claims, it was incorrect for at least two reasons.

¶ 7 In the first instance, while "backdating" the praecipe might have served to remedy a late time-stamping of the praecipe, as the discussion *infra* should conclusively demonstrate, the failure to "backdate" the praecipe would not necessarily establish that Appellants' praecipe was **filed** untimely. As such, the denial of this order does not even conclusively settle the statute of limitations question, let alone Appellants' entire claim for personal injury. Secondly, the statute of limitations is an affirmative defense which can be waived. *Fudula v. Keystone Wire and Iron Works, Inc.* 283 Pa.Super. 502, 424 A.2d 921 (1981). As such, even if the denial of Appellants' petition to backdate is deemed the equivalent of a finding that Appellants' praecipe was filed untimely, that order did not, nor could not, end the litigation on Appellants' claim. It was still necessary for Appellants' civil action to be put to rest. The most likely approach to accomplish this would have been for Appellees to take some affirmative step, such as the one ultimately taken here, in order to have judgment entered in their favor, thereby ending to the litigation. Since Appellants' took a timely appeal from the order that conclusively defeated their claim for damages, claim preclusion does not apply here.

¶ 8 With respect to collateral estoppel, or "issue preclusion," there is a similar impediment to the applicability of collateral estoppel. The doctrine of collateral estoppel requires the determination on the merits **in a prior case or proceeding** of an issue central to the current litigation. *Id.*[3] As the above discussion demonstrates, there has been but one action litigated here. By its description, the doctrine of collateral estoppel does not apply to "prior determinations" within the same case. Moreover, for collateral estoppel to apply, the issue must have been decided on the merits. The order of May 15, 2001 does not purport to answer the statute of limitations question; rather, the order in question explicitly denied Appellants' petition for failure to file a supporting brief and states no conclusion regarding the timeliness of the filing of Appellants' praecipe.[4] As such, it does not constitute a determination of the timeliness of the action and cannot be used to preclude relitigation of that issue.

¶ 9 Lastly, to the extent the court had in mind the legal principle or doctrine commonly described as "the law of the case" when it referred to *res judicata*, that principle is equally inapplicable, at least as to preventing our review of the matter. The law of the case doctrine bars the relitigation, or reversal of a ruling, on an issue already determined in another phase of the litigation of the same case before the same court. Standard Pennsyl-

---

3. Similarly, the Pennsylvania Supreme Court describes collateral estoppel, as follows:

    Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated. *Id.* The identical issue must have been necessary to final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party, to the prior action and must have had a full

    and fair opportunity to litigate the issue in question. *Id.* at 94–95, 101 S.Ct. 411. *Balent,* 669 A.2d at 313.

4. The Order reads: "AND NOW, this 1 day of May, 2001 upon consideration [of] Plaintiff's Petition to Back Date Summons and thirty (30) days having passed without the filing of a supporting brief, it is hereby ORDERED that the Plaintiff's Petition is hereby dismissed as provided for in Local Rule 302(F)."

vania Practice 2d. § 65:59, *Tyro Industries, Inc. v. James A. Wood, Inc.*, 418 Pa.Super. 296, 614 A.2d 279 (1992). The doctrine is designed to promote conclusiveness at the stage of litigation in question so that the same issue is not repeatedly litigated in the same court in the same case. However, it does not apply once the matter is appealed to a higher court. Since the court apparently viewed its order denying the petition to backdate as a determination of the merits of the timeliness issue, conceivably the trial court may have believed it was bound by its prior determination when summary judgment was under consideration. However, as stated earlier, there are at least two reasons why the denial of the petition to backdate should not have been viewed as a determination that the praecipe had been filed in an untimely manner. Thus, to the extent the court viewed that order in that manner, it erred.

¶ 10 Additionally, as suggested earlier, since the order in question did not put "Appellants out of court," it was not a final order for appealability purposes.[5] Thus, Appellants should not have been viewed as having waived their right to challenge the court's decision on the timeliness issue. Moreover, even if the trial court correctly felt bound by its prior decision, it would not impair this Court's ability to consider the merits of the issue since Appellants appealed the court's decision at the first available opportunity. Thus, for the above reasons, the trial court erred when it found "res judicata" applicable to bar examination of the statute of limitations question during consideration of Appellees' motion for summary judgment. Alternatively, we see no impediment to our review of the merits of the statute of limitations issue.

¶ 11 We now turn to the appropriateness of granting summary judgment in Appellees' favor. When the trial court concluded that the statute of limitations had run, it implicitly concluded that Appellant's praecipe had not been "filed" until it had been time-stamped by a clerk in the prothonotary's office. This was error. As the discussion that will follow should make clear, the term "filing" is not the equivalent of either the prothonotary's time-stamping of a document or the recording of receipt on the docket.

¶ 12 While we are dealing with matters of civil litigation, a valuable place to begin our analysis is a rule of judicial construction relating to the "filing" of documents in the criminal law arena known as the "prisoner mailbox rule." The prisoner mailbox rule provides that a document is deemed "filed" when duly posted with the prison's mail staff and is, perhaps, the most liberal rule in our law for determining the time of the filing of a document. While there is not a similarly forgiving rule in the civil litigation arena, at least not for unincarcerated litigants,[6] a valuable point is made

---

5. Some time ago, the Pennsylvania Supreme Court offered the following insight into what constitutes a final order for appealability purposes:

   We have variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case. *Piltzer v. Independence Savings and Loan Association*, 456 Pa. 402, 404, 319 A.2d 677, 678 (1974); *James Banda Inc. v. Virginia Manor Apartments, Inc.*, 451 Pa. 408, 409, 303 A.2d 925, 926 (1973). Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant "out of court." *Ventura v. Skylark Motel, Inc.*, 431 Pa. 459, 463, 246 A.2d 353, 355 (1968).

   *T.C.R. Realty, Inc., v. Cox*, 472 Pa. 331, 372 A.2d 721, 724 (1977). *See also*, Pa.R.A.P. 341(b).

6. *Thomas v. Elash*, 781 A.2d 170 (Pa.Super.2001),extends the prisoner mailbox rule to incarcerated civil litigants.

clear in certain discussions of the prisoner mailbox rule. In *Commonwealth v. Castro*, 766 A.2d 1283, 1287 (Pa.Super.2001), while discussing the legal meaning of the term "file," we stated:

the term "file" cannot be completely equated with the purely ministerial act of docketing the receipt of a legal document. Rather, the act of "filing" a document is far more a legal construct that focuses as much, if not more, upon the act of the litigant in placing the document in the hands of the appropriate ministerial office than in the actual act of docketing the receipt of the document.

¶ 13 In deciding *Castro*, we relied, in part, upon language of the United States Supreme Court that is very instructive here. The Court said "the rationale for concluding that receipt constitutes filing in the ordinary civil case is that the appellant has no control over delays between the court clerk's receipt and formal filing of the notice." *Houston v. Lack*, 487 U.S. 266, 273–74, 108 S.Ct. 2379, 2383–84, 101 L.Ed.2d 245 (1988).

¶ 14 If the term time-stamping is substituted for the terms "docketing" and "formal filing" as used in *Castro* and *Houston* respectively, a controlling legal premise becomes apparent, the time a document is filed cannot be equated with the time a document is time-stamped by the prothonotary. Indeed, the language from *Houston* recognizes that there is normally a delay between receipt and time-stamping/formal filing and indicates that, under the law of many jurisdictions, the latter act does not control the time of filing. Moreover, the above interpretation cannot be confined to the criminal law area. Pa. R.C.P. 205.1 governs the filing of documents in civil actions and provides:

**Rule 205.1. Filing Legal Papers. Mailing. Personal Presentation by Attorney Not Necessary**

Any legal paper not requiring the signature of, or action by, a judge prior to filing may be delivered or mailed to the prothonotary, sheriff or other appropriate officer accompanied by the filing fee if any. Neither the party nor the party's attorney need appear personally and present such paper to the officer. . . . A paper sent by mail shall not be deemed filed until received by the appropriate officer.

¶ 15 As the rule plainly provides, documents mailed to the prothonotary or other office are deemed filed when **"received** by the appropriate officer." (Emphasis added.) Thus, the applicable Pennsylvania Rule of Civil Procedure utilizes an alternate form of the same word used in *Houston*. Clearly then, under Pa.R.C.P. 205.1, a document is filed when received by the prothonotary, regardless of when it is later time-stamped.

¶ 16 Our Supreme Court has similarly focused upon receipt in determining the time of filing. In *Criss v. Wise*, 566 Pa. 437, 781 A.2d 1156, 1159 (2001), our Supreme Court stated:

Pennsylvania Rule of Civil Procedure 1308 states that a notice of appeal must be "filed with the prothonotary" of the court where the action is pending within thirty days from the date that the prothonotary notes on the docket that the judgment on the arbitration award has been entered and the parties have been notified of that judgment. Pa.R.C.P. 1308. Unlike the Rules of Appellate Procedure, which in certain instances specify that filings can be deemed filed on the date they are deposited in the U.S. Mail, the Pennsylvania Rules of Civil Procedure do not so provide. In fact, Rule of Civil Procedure 205.1 spe-

cifically provides that "[a] paper sent by mail shall not be deemed filed until received by the appropriate officer." Pa. R.C.P. 205.1. Moreover, appellate courts do not have the authority to enlarge the time for filing a notice of appeal. Pa.R.A.P. 105. Therefore, as Rule 1308 now stands, for an appeal from an arbitration award to be deemed timely filed, the prothonotary of the court where the action is pending *must receive* a notice of appeal within thirty days from the date the prothonotary notes on the docket that the arbitration award has been entered and the parties have been notified of the award.

¶ 17 In *Criss,* the Supreme Court chose to place emphasis upon the words "must receive," thereby demonstrating that the controlling factor is receipt, not time-stamping. Consequently, and employing common understanding to the term "received," from a theoretical viewpoint, Pa. R.C.P. 205.1 provides that Appellants' praecipe for summons must be deemed to have been "filed" the moment that it passed through the doorway of the Montgomery County Prothonotary's Office. The time-stamping of the document is nothing more than a ministerial act following the actual filing of the document.

¶ 18 While barring tampering with the time-stamping machine, time-stamping provides conclusive proof that the item was received in the prothonotary's office no later than the time stamped on the document, the opposite premise is not true. That is, it cannot be said with any degree of conclusiveness that a document was not received until the moment immediately prior to being time-stamped. As a matter

of necessity, a document arriving at the prothonotary's office will go unstamped for a variable period of time simply due to the fact that a certain amount of time will pass before the document is "processed" by employees of the prothonotary's office. The period of delay may depend upon a myriad of factors, but can undoubtedly range from minutes, to hours to days, or possibly, in rare situations, weeks if the document should be lost or misplaced.

¶ 19 Undoubtedly, civil practitioners as well as those employed in the prothonotary's offices across the Commonwealth could provide enlightening tales regarding the range of delays commonly occurring in the processing of mail. Fortunately, in the present case, we do not have to rely upon anecdotes or "war stories" of practitioners to understand the vagaries of the potential time lag between receipt and time-stamping. Instead, we have been supplied with the deposition testimony of Joseph C. Giannetti, the First Deputy Prothonotary of Montgomery County, at the time in question. Mr. Giannetti's testimony provides compelling evidence why, generally speaking, receipt cannot be presumed to have occurred in the moments immediately preceding the time-stamping of the document in question.

¶ 20 Mr. Giannetti testified that at the time Appellants' praecipe was filed, the prothonotary's office time-stamp reflected the time the document was actually stamped and not the day the item was "received." Subsequent to the filing of Appellants' praecipe, the process was changed so that as mail was received it was deposited into mail tubs marked with the date the item was received.[7] Then,

---

7. Despite adoption of the new system, Appellants allege to have evidence of continued time lapses between receipt and time-stamping. Appellants include the evidence, a certified mail receipt showing receipt by the

prothonotary's office on October 11, 2002, contrasted to a copy of the time-stamped document bearing a time-stamp of October 15, 2002, in their Reproduced Record. This incident occurred after the decision rendered

when the document was later time-stamped, the time-stamping machine would be set to bear a time-stamp reflecting the day it was received by the prothonotary as opposed to the day it was actually stamped. Although Mr. Giannetti was not certain why the practice was changed, he believed that it was done to benefit the attorneys filing documents and was implemented after Judge Thomas DelRicci requested a change in the way items were stamped.

¶ 21 Mr. Giannetti further testified that, at the time in question, the prothonotary's office typically received mail two to three times a day. The largest shipment of mail, frequently two to three "tubs," arrived early in the morning and had already been delivered from the courthouse mailroom to the prothonotary's office when he arrived at 7:30 a.m. The clerks that actually time-stamped the documents began work at 8:30 a.m. When the clerks came to work, they would often begin "processing" mail. The first steps in processing a document included the opening of the mail and then time-stamping the document. The mail processed was either retrieved from the mail tubs or pieces of mail that had been left on their desk from the previous workday. Mr. Giannetti indicated that the mere fact that the praecipe in question bore a time-stamp of April 20, 1999, did not mean that the praecipe had not been received in the prothonotary's office until April 20th. Moreover, Mr. Giannetti admitted that there was no way to tell from the time-stamp when the document had actually been received and that there were no other records detailing the receipt of mail. Mr. Giannetti also admitted that there were times the prothonotary's office

would be a day or two "behind" in processing mail.

¶ 22 Lastly, Mr. Giannetti was asked about the affidavit of Denise Dougherty, who worked in the office of Appellants' attorney. Ms. Dougherty's affidavit asserts that she called the prothonotary's office shortly after the incident in question and spoke with Mr. Giannetti about the time-stamping of the praecipe and was told by Mr. Giannetti that the prothonotary's office "was backed up a few days" during the time in question. Mr. Giannetti was asked if he believed Ms. Dougherty accurately represented what happened. Mr. Giannetti responded, "yes, I do." When questioned on cross-examination as to this response he indicated that he did not have a personal recollection of this conversation with Ms. Dougherty but indicated that "it happens, so therefore, it could have happened then." N.T. Deposition at 32.

¶ 23 Having concluded that, as a point of law, Appellants' praecipe was filed when it arrived at the prothonotary's office, we must now examine the above evidence in the context of an award of summary judgment in Appellees' favor. The awarding of summary judgment with respect to an issue of fact is supportable only when the non-moving party has failed to adduce evidence from which a factfinder could find in his/her favor. *Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733 (1998). Stated alternatively, where there is evidence that would allow a jury to find in the non-moving party's favor, summary judgment should be denied and the case should proceed to trial. Moreover, the evidence must be viewed in a light most favoring the non-movant giving that party the benefit of credibility determinations and any inferences deducible from the evidence.

below and for this reason, as well as the fact that the documents are not contained in the original record, cannot be a basis for the granting of relief. Nevertheless, it is worth

noting to demonstrate why there is a certain inherent unreliability in accepting the time-stamped date as the date of receipt.

*Young v. Commonwealth,* 560 Pa. 373, 744 A.2d 1276 (2000). Thus, in the present case, we must examine the evidence to determine whether a reasonable factfinder could conclude that Appellants' action was instituted in a timely fashion.

¶ 24 Although we must determine whether there was sufficient evidence from which a factfinder might conclude the action was timely filed, our task might be made easier to first consider the factual scenario necessary to render Appellants' praecipe untimely filed. The motor vehicle accident underlying this appeal occurred on April 18, 1997. Thus, Appellants were required to institute their civil action no later than April 18, 1999. However, April 18, 1999, fell on a Sunday. Therefore by rule, Appellants were required to file suit by April 19, 1999. Appellants' praecipe was time-stamped by Michael Drea at 8:31 a.m., April 20th, 1999,[8] a mere minute after clerks normally began work for the morning. In context, the time-stamp of 8:31 a.m., implies that Appellants' praecipe was the first piece of mail handled by Mr. Drea on April 20th. Since Mr. Giannetti's testimony indicates that mail was routinely received early in the morning before the prothonotary's office opened for business, it is possible that the praecipe was not received by the prothonotary until early on the 20th. Nevertheless, for this to be true, it would be necessary that the first piece of mail processed by Mr. Drea on the 20th was not only a piece of mail received that particular morning but was also, by sheer fortuity out of the approximately three tubs of mail typically received, Appellants' praecipe. While this is certainly possible, it is clearly not a conclusion compelled by the evidence of record and, in fact, seems somewhat improbable. Yet, this is the construction of the evidence that most favors Appellees.

¶ 25 In contrast, since the praecipe was indeed time-stamped it was clearly received by the prothonotary's office. Thus, the only question remaining was on what day it was received in the prothonotary's office. If the evidence of record were viewed favorably to Appellants, it would mean that Appellants' praecipe was mailed on April 13, 1999, an entire week prior to the actual time-stamping of the document and a full six days prior to the running of the limitations period. Common experience teaches that it normally does not take more than a day or two for the post-office to deliver mail to a location in a neighboring county, as Montogmery County is to Philadelphia County. Thus, the proposition that the praecipe was received sometime between April 14th and April 19th seems every bit as probable, if not far more so, than the proposition that it was not received until the morning of the 20th.

¶ 26 Although the above should have been viewed as sufficient to defeat the motion for summary judgment, it is worth noting the other evidence that bolsters this version of the facts. First, Ms. Dougherty's affidavit indicates that when she talked to Mr. Giannetti shortly after the praecipe had been filed Mr. Giannetti stated that the prothonotary's office had been backed up. Additionally, although Mr. Giannetti was not specifically asked whether older mail was processed before newer mail, the terminology "backed up" as well as common business practices certainly suggests that clerks would normally process the older mail before the newer mail. This fact also preponderates toward the conclusion that the writ was received earlier than the 20th. Finally, Mr. Giannetti also indicated that he had no reason to doubt Ms. Dougherty, as backups were known to occur.

**8.** As is the custom of the prothonotary's office, the writ was signed by Michael Drea when time-stamped indicating that he was the individual that processed that document.

¶ 27 Thus, an assessment of the whole of the evidence clearly reveals that there remains a question of fact regarding the timeliness of Appellants' praecipe. Conversely, it cannot be stated that the evidence can only reasonably support the conclusion that Appellants' praecipe was untimely. As such, it was error to grant summary judgment in the present case. .

¶ 28 Although the above discussion should make clear that summary judgment was erroneously granted as there remained an issue of material fact to be determined, we believe we must address the case of *Booher v. Olczak*, 797 A.2d 342 (Pa.Super.2002), as Appellees' entire counter-argument relies upon this decision. According to Appellees, the present case is "governed by" *Booher*. We disagree. Like the present case, *Booher* involved a time lapse between the date the writ was allegedly mailed and the date it was time-stamped. Allegedly mailed on March 3, 2000, the writ was not time-stamped until March 10, 2000. The statute of limitations required filing of the suit by March 6, 2000. The Boohers argued that they had complied with the statute of limitations, but both the trial court and this Court disagreed. Nevertheless, rather than focusing upon the technical aspects of when a document must be deemed to have been filed,[9] the *Booher* panel focused upon equitable tolling of the statute of limitations. The panel states:

> The Boohers cite no authority for the proposition that the mailing of a praecipe for a writ of summons by counsel for a litigant who is not incarcerated

tolls the statute of limitations on the day it is mailed, nor has our research revealed any such cases. This suit was filed after the statute of limitations period ran, and the Boohers' claims are time barred. The Boohers argue that this is a case of excusable neglect since "counsel had no control of the mail or the Westmoreland County Prothonotary's Office." The Boohers' Brief, at 11. We cannot agree that this provides an excuse sufficient to toll the running of the statute of limitations. This Court recently declined to create a new exception to the statute of limitations based on non-negligent circumstances. *See Mosley v. Settles*, 2001 PA Super 203, 779 A.2d 1208 (Pa.Super.2001) (statute of limitations was not tolled when counsel for plaintiff filed praecipe for a writ of summons one day beyond the expiration of the limitations period due to counsel's incapacitation as a result of back surgery).

*Id.* 797 A.2d at 345.

¶ 29 As opposed to our discussion above, the *Booher* panel did not discuss what constituted the filing of the Boohers' writ of summons. Rather, it seemingly assumed that the writ had not been filed until time-stamped and then occupied itself with considerations of tolling the limitations period. Of course, in the context of the statute of limitations the term "toll" means to stop the period from running. *Booher* correctly implies that, under current law, those who choose to rely upon the mail to "file" legal documents assume the risk of late delivery or

---

9. The *Booher* panel does state that the writ "was not filed until March 10, 2000, the date stamped on the document by the Westmoreland County Prothonotary's Office." *Booher*, 797 A.2d at 345. However, the panel seemingly makes this comment in passing, and not as a specific holding that a document is not filed until stamped. The panel does not address Pa.R.C.P. 205.1, and other relevant law

discussing what constitutes filing of a document. Moreover, the *Booher* panel's focus is upon equitable tolling of the statute of limitations, not upon the conceptual circumstances related to the "filing" of a document. Thus, we do not regard this isolated phrase in *Booher* as a definitive statement of law or as the holding of the case.

even lost or misplaced mail. As we noted above, and as *Booher* also recognizes, a document is not deemed filed with the prothonotary when placed in the mail. *Booher* furthers holds that a delay caused by the postal service is not a sufficient basis to toll the limitations period. However, as our analysis above hopefully makes clear, under the rules of civil procedure a document is filed when it arrives at the prothonotary's office, regardless of the date the document is time-stamped. Unlike the Boohers, Appellants are not relying upon a tolling of the statute of limitations, or an excusing of the late filing. Rather, they argue that their writ was timely filed and that there exists at least a question of fact in this regard. We agree, and see nothing in *Booher* to negate this conclusion or the above analysis.

¶ 30 Order vacated. Remanded for continuation of proceedings. Jurisdiction relinquished.

¶ 31 Judge CAVANAUGH concurs in the result.