IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Ligonier Township | : |
| | : No. 566 C.D. 2016 |
| v. | : |
| | : Argued: April 6, 2017 |
| Margaret S. Nied and Paul J. Nied, | : |
| her husband, and Foxley Farm, LLC, | : |
| and Christopher Turner and Carolyn | : |
| Shearer Turner, husband and wife, | : |
| Donald Korb and Carolyn Roberts | : |
| Korb, husband and wife, and David | : |
| Barnhart and Sally Ann Barnhart, | : |
| husband and wife | : |
| | : |
| Appeal of: Margaret S. Nied, Paul J. | : |
| Nied and Foxley Farm, LLC | : |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE McCULLOUGH                            FILED: May 4, 2017


Margaret S. Nied, Paul J. Nied, and Foxley Farm, LLC (Defendants) appeal the March 8, 2016 order of the Court of Common Pleas of Westmoreland County (trial court), which ordered Defendants to pay counsel fees in the amount of $53,563.53, pursuant to its August 7, 2015 order finding Defendants in contempt for violating a consent order (Consent Order) executed by counsel for Defendants,

Ligonier Township (Township), Christopher and Carolyn Turner, Donald and Carolyn Korb, and David and Sally Ann Barnhart (Intervenors).[1]

**Facts and Procedural History**

Margaret and Paul Nied (Nieds) are the owners of an approximately 59 acre tract of realty located at 118 Foxley Farm Lane, Ligonier Township, Pennsylvania (Property), which contains a single family residence and various out-buildings. The Property is located in the Township's R-2 Residential District. Defendants regularly engaged in commercial activities at the Property that are generally prohibited in the zoning district, such as: overnight accommodation of guests; large group activities and gatherings; political fundraising and corporate events; graduation parties and miscellaneous celebrations; and weddings. The Nieds conducted these commercial activities through Foxley Farm, LLC.

On September 6, 2012, a Township Zoning Officer issued Defendants a notice of violation based on their commercial use of the Property. Specifically, the notice provided that Defendants' violation was "[c]ommercial use of property and buildings without proper approvals and permits, failure to obtain Conditional Use Permit, Occupancy Permit, violation of Agricultural Requirements, Conducting activities not permitted as Accessory Farm businesses." (Certified Record (C.R.) at No. 1, Exhibit 3.)

Defendants subsequently applied for zoning occupancy permits, seeking authorization to use the Property for: 1) residential and agricultural use; and 2) accessory farm business, i.e., "agritourism and includes such activities as

---

[1] Intervenors are neighboring and interested thirty-party property owners who were permitted to intervene in this matter.

gardening/farming demonstrations and educational programs, farm-to-table events; farm stays, family reunions and weddings." (C.R. at No. 1, Exhibit 4.) The Zoning Officer issued a permit authorizing the Property's use for residential and agricultural purposes. However, Defendants' application to conduct certain commercial activities at the Property was denied.

Defendants appealed the Zoning Officer's decision to the Township Zoning Hearing Board (Board), alleging that the proposed commercial uses were permitted as accessory farm business. The Board conducted a hearing and, on February 26, 2013, issued a decision sustaining the Zoning Officer's denial of Defendants' application to conduct commercial activities at the Property.

On March 14, 2013, the Township filed a complaint in the trial court, alleging that Defendants continued to engage in unauthorized and unpermitted commercial activities at the Property. The Township requested that the trial court order Defendants to immediately cease and desist from conducting commercial business activities at the Property and enjoin Defendants from performing further commercial activities at the Property until the necessary permits are issued. (Reproduced Record (R.R.) at 1a-9a.)

A hearing on the Township's request for injunction was scheduled for April 12, 2013. However, that day the parties engaged in negotiations and the trial court entered the Consent Order, which was executed by counsel for the Township, Defendants, and Intervenors, and provided that:

> 1. [The Township's] request for injunction is granted to prohibit overnight accommodations and non-approved commercial activities unless, or until, a certificate of occupancy is issued to permit said activities, other than those activities specifically set forth below.

3

2.   Pursuant to this order, [Defendants] are permitted to conduct not more than eleven (11) events at the property, none of which may exceed two hundred (200) attendees, and nine (9) of which may not exceed one hundred fifty (150) attendees.  For the purposes of this order, an event is defined as having ten (10) unrelated attendees.  A schedule of said events will be provided to counsel for all parties no later than end of business on Monday April 15, 2013.

3.   With respect to all events, there will be a third party security officer employed by Laidlaw Co. on site at all times to confirm compliance with this order and to manage traffic and parking.  Said officer will be at the expense of the Defendants and shall be available to communicate with counsel.

4.   All activities related to events will cease no later than 11:00 pm.

5.   All parking shall take place along the paved lanes and within the horse ring area.

6.   No music or audio equipment shall be permitted outside of the structure where the event is being held.

7.   Defendants shall seek approval for on-lot sewage disposal and comply with all Township ordinances and [Department of Environmental Protection] regulations relating to sanitary sewage, to the satisfaction of the sewage enforcement officer, prior to the commencement of any event.

8.   Defendants shall immediately cease any and all marketing or advertising of weddings, or wedding related events at the [P]roperty unless or until the issuance of a certificate of occupancy specifically permitting weddings.

9.   Defendants shall immediately cease any and all marketing or advertising of overnight accommodations of guests at the [P]roperty unless, or until, the issuance of a certificate of occupancy specifically permitting overnight accommodations.

4

10. The Defendants shall withdraw the pending zoning appeal, Civil Action No. 1335 of 2013, with prejudice, and agree not to seek approval for weddings or wedding related events at the site unless a zoning amendment or legislation is enacted to specifically allow weddings at the site.

11. Starting today, there will be no bookings of overnight accommodations or non-approved commercial activities, including weddings or wedding-related events unless or until a certificate of occupancy is issued specifically allowing such activities or weddings.

12. Should any enforcement action be brought pursuant to this order the prevailing party will be entitled to reasonable attorney's fees of other parties.

(R.R. at 23a-25a.)

On September 20, 2013, Intervenors, joined by the Township, filed a Petition for Rule to Show Cause Why Defendants Should Not Be Held in Contempt of the Consent Order, alleging that Defendants knowingly violated the same because, *inter alia*, they conducted unpermitted events at the Property. (R.R. at 27a-33a.)

Defendants filed an answer[2] denying they violated the Consent Order, raising affirmative defenses, and alleging that Intervenors were barred from bringing the action pursuant to the doctrine of unclean hands because Intervenors had contacted individuals who contracted with Defendants and attempted to induce them to cancel their agreements. Additionally, Defendants averred that the events were permitted accessory events under applicable zoning laws and, similarly, Intervenors were estopped from pursuing the action because Defendants relied on the Township's actions and statements when conducting activities at the Property. (R.R. at 48a-52a.)

---

[2] By order dated November 8, 2013, the trial court issued an order granting Scott Avolio's motion to withdraw as counsel for Defendants. (R.R. at 55a.)

5

On April 14, 2014, the trial court conducted a hearing on the issue of alleged contempt, wherein Ms. Nied and Intervenor Christopher Turner testified.

On April 28, 2014, Defendants filed a Petition for Rule to Show Cause Why the Consent Order Should Not Be Vacated, alleging, *inter alia*, that the Consent Order should be vacated based on fraud, mutual mistake, duress, and selective enforcement. Intervenors filed an answer, averring that Defendants' petition should be dismissed because it was facially meritless in that Defendants failed to allege any facts that occurred prior to execution of the Consent Order and failed to plead facts with sufficient particularity or state a cognizable claim. (R.R. at 193a-210a, 236a-69a.)

The trial court scheduled a hearing for July 17, 2014, to take the testimony of Defendants' former counsel, Scott Avolio, as well as to hear argument on Defendants' petition. The trial court also scheduled a hearing for July 29, 2014, for the limited purpose of taking Ms. Nied's testimony. (R.R. at 316a-17a, 469a.)

By order dated July 29, 2014, the trial court denied Defendants' petition and determined that no Rule to Show Cause shall issue. Thereafter, Defendants filed a motion for reconsideration or, in the alternative, a motion to certify order for interlocutory appeal. (R.R. at 719a, 723a-34a.)

By opinion and order dated September 19, 2014, the trial court denied Defendants' motion for reconsideration, reasoning that Defendants did not establish *prima facie* grounds to set aside the Consent Order based on fraud, duress, or mutual mistake. However, the trial court granted Defendants' motion to certify order for interlocutory appeal.[3] (R.R. at 800a-10a.)

---

[3] By order dated September 30, 2014, the trial court deferred ruling on Intervenors' Petition for Rule to Show Cause Why Defendants Should Not Be Held in Contempt pending Defendants' appeal. (R.R. at 811a.)

6

By order dated January 13, 2015, this Court quashed Defendants' appeal, reasoning that Defendants failed to file a petition for permission to appeal pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 1311(b). Thereafter, the Pennsylvania Supreme Court denied Defendants' petition for allowance of appeal. (R.R. at 822a-23a, 825a.)

By order dated August 7, 2015, the trial court found Defendants in contempt because they knowingly and willingly violated the Consent Order. Consequently, the trial court ordered Defendants to pay $53,563.53 for Intervenors' legal expenses, but noted that Defendants' counsel may petition for a hearing to determine whether the legal fees are reasonable. More specifically, the trial court concluded:

> 1. On April 12, 2013, the Honorable Richard E. McCormick, Jr. entered a Consent Order permitting the Defendants to conduct not more than eleven (11) events at the property Foxley Farm. The Order also precluded the Defendants from booking or providing overnight accommodations for non-approved commercial activities, including weddings or wedding-related events unless or until a certificate of occupancy was issued by the Township specifically approving those activities or events.
>
> 2. On April 18, 2013, counsel for the Defendants indicated in a letter, that eleven (11) events were scheduled at Foxley Farm, the last event being scheduled to occur on August 17, 2013. Contrary to the letter, however, and in violation of the Consent Order of Court, the Defendants held in excess of eleven events at Foxley Farm. Specifically, the Defendants held five additional events after August 17, 2013.
>
> 3. This Court finds that the Defendants knowingly and willfully violated the April 12, 2013 Consent Order when they conducted more than eleven (11) events at the property of Foxley Farm without approval from the Plaintiffs. More specifically, Defendants, being party to the Consent Order

7

of Court dated April 12, 2013, had explicit knowledge of the terms and conditions of said Order. Evidence presented at the contempt hearing leads this Court to the finding that the Defendants chose to ignore the explicit terms of the Consent Order, at the risk of suffering whatever sanctions and penalties said Order provided.

4. This Court finds that the injunction shall remain in full force and effect and the Defendants are hereby prohibited from hosting, holding, or conducting dinners, weddings, wedding receptions, events, fundraisers, "farm-to-table" dinners, or any other events on their property, which are inconsistent with, and/or specifically prohibited by the explicit terms of the Consent Order of Court dated April 12, 2013, unless, or until, a certificate of occupancy is issued to permit said activities.

5. The Defendants are ordered to pay $2,500.00 to the Plaintiff, Ligonier Township in civil penalties. ($500.00 per additional event).

6. Additionally, the Defendants are ordered to pay $12,018.84 to the Plaintiff, Ligonier Township, for Attorney's Fees, costs, and expenses.

7. Additionally, the Defendants are ordered to pay the sum of $53,563.53 to the firm of Sittig, Cortese & Wratcher, LLC, for professional services and expenses incurred by Intervenors.

8. Counsel for the Defendants may petition the Court for a hearing to determine whether the requests for counsel fees and expenses made by both Plaintiff and Intervenors are reasonable under the circumstances and extent of the within litigation. Said requests, if any is made, shall be presented within twenty (20) days of the date of the within Order of Court.

9. In light of the undersigned being transferred to the criminal section of the court, the Court Administrator shall reassign this matter to the appropriate Civil Court judge for further proceedings.

(R.R. at 826a-28a.)

8

Defendants filed a motion seeking a hearing on the reasonableness of attorney's fees and the trial court scheduled a hearing for the same. By order dated March 8, 2016, the trial court determined that the award of attorney's fees was proper. Defendants appealed the trial court's order to this Court. (R.R. at 966a.)

On appeal,[4] Defendants argue that the trial court committed an error of law when it denied their Petition for Rule to Show Cause Why the Consent Order Should Not Be Vacated because they established *prima facie* grounds for the requested relief. Defendants also argue that the trial court erred in finding them in contempt because the Consent Order was void *ab initio* on the basis of fraud, duress, and mutual mistake. Alternatively, Defendants argue that the trial court erred in awarding an excessive sum of attorney's fees for services not directly related to Intervenors' efforts to enforce the Consent Order.

**Discussion**

Pennsylvania Rule of Civil Procedure (Rule) 206.4 provides:

> (a)(1) Except as provided by subparagraph (2), a petition shall proceed upon a rule to show cause, *the issuance of which shall be discretionary with the court as provided by*

---

[4] "The general rule is that 'each court is the exclusive judge of contempt against its process, and on appeal its action will be reversed only when a plain abuse of discretion occurs.'" *Jack Rees Nursing and Rehabilitation Services v. Hersperger*, 600 A.2d 207, 209 (Pa. Super. 1991) (citing *Fatemi v. Fatemi*, 537 A.2d 840, 846 (Pa. Super. 1988)). An abuse of discretion occurs "when the course pursued represented not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Luzerne County Flood Protection Authority v. Reilly*, 825 A.2d 779, 782 (Pa. Cmwlth. 2003) (citing *Morrison v. Department of Public Welfare*, 646 A.2d 565, 571-71 (Pa. 1994)).

9

*Rule 206.5* unless the court by local rule adopts the procedure of 206.6 providing for issuance as of course.[5]

(2) A judgment shall be stricken without the issuance of a rule to show cause where there is a defect on the face of the record that constitutes a ground for striking a default judgment.

(b) The procedure following issuance of the rule to show cause shall be in accordance with Rule 206.7.

Pa.R.C.P. No. 206.4 (emphasis added).

Rule 206.5(c) states "[i]f the petition is within the scope of Rule 206.1(a), is properly pleaded, and states prima facie grounds for relief, the court *shall enter an order issuing a rule to show cause* and may grant a stay of proceedings." Pa.R.C.P. No. 206.5(c) (emphasis added). Rule 206.1(a) defines a "petition" as:

(1) an application to strike and/or open a default judgment or a judgment of non pros, and

(2) any other application which is designated by local rule, numbered Local Rule 206.1(a), to be governed by Rule 206.1 *et seq.*

Pa.R.C.P. No. 206.1(a).

Westmoreland County Local Rule 206.1(a) states that no application other than those listed in Rule 206(1) have been designated as petitions. Moreover, the trial court's local rules enumerate its procedures when presented with a Rule to Show Cause, providing that "[a]t the time of presentation, *the court shall use the discretion granted by Pa.R.C.P. [No.] 206.4* to determine if a rule to show cause should be issued and whether an interim relief requested should be granted. The interim relief may include a stay of execution." Rule 206.4(c)(3) (emphasis added).

---

[5] Westmoreland County has not adopted the procedure under Pa.R.C.P. No. 206 providing for issuance as of course.

"The interpretation and application of a Pennsylvania Rule of Civil Procedure presents a question of law. Accordingly, to the extent that we are required to interpret a rule of civil procedure, our standard of review is de novo, and our scope of review is plenary." *Keller v. May*, 67 A.3d 1, 5 (Pa. Super. 2013) (citing *Gray v. Buonopane*, 53 A.3d 829, 834 (Pa. Super. 2012)).

Defendants argue that the trial court erred in failing to issue their requested Rule to Show Cause because they presented *prima facie* grounds for relief.[6] According to Defendants, they are entitled to issuance of the Rule to Show Cause Why the Consent Order Should Not Be Vacated pursuant to Rule 206.5(c) and the trial court's failure to do so improperly insulated the Township and Intervenors from discovery that would have proved the veracity of their claims. Defendants also aver that, by holding two evidentiary hearings, the trial court implicitly conceded that Defendants established *prima facie* grounds for relief.

---

[6] Conversely, Intervenors argue that Defendants are prohibited from raising this argument pursuant to the "law of the case" doctrine. According to Intervenors, this Court's order quashing Defendants' appeal from the trial court's order, as well as the Supreme Court's denial of Defendants' subsequent petition for appeal, which denied Defendants' motion for reconsideration because Defendants did not establish *prima facie* grounds to set aside the Consent Order, precludes Defendants from raising the issue now.

"[U]nder the law of the case doctrine, 'a court involved in the later phases of a litigated matter should not reopen questions *decided* by another judge of that same court or by a higher court in the earlier phases of the matter.'" *Commonwealth v. Wright*, 14 A.3d 798, 817 (Pa. 2011) (quoting *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995)) (emphasis added). Here, however, this Court quashed Defendants' appeal on procedural grounds, i.e., failure to comply with Pa. R.A.P. 1311(b), and did not *decide* the merits of the issue. Therefore, Intervenors' argument in this regard is unpersuasive. *See also Griffin v. Central Sprinkler Corporation*, 823 A.2d 191, 195 (Pa. Super. 2003) ("The law of the case doctrine bars the relitigation, or reversal of a ruling, *on an issue already determined* in another phase of the litigation of the same case before the same court.") (emphasis added).

11

Westmoreland County has not designated any application other than those listed in Rule 206(1) as a "petition." Therefore, the only petitions that fall within Rule 206.1(a) in Westmoreland County, and trigger the non-discretionary issuance procedure, are: (1) an application to strike and/or open a default judgement; or (2) an application for judgment of non pros. The issuance of other petitions for Rules to Show Cause is discretionary.

Here, Defendants filed a petition for Rule to Show Cause Why the Consent Order Should Not Be Vacated; they did not file an application to strike and/or open a default judgment, or an application for judgment of non pros. Consequently, the issuance of the requested Rule to Show Cause was discretionary. As such, the trial court did not commit an error of law when it declined to issue the Rule to Show Cause because Defendants' petition did not implicate the non-discretionary issuance procedure under Rule 206.5(c).

Next, Defendants argue that the trial court erred when it found Defendants in contempt of the Consent Order when the same was void *ab initio* on the basis of fraud, duress, and mutual mistake and, therefore, null and void since its inception.[7]

To sustain a finding of civil contempt, the complainant must prove: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent. *Lachat v. Hinchcliffe*, 769 A.2d 481, 489 (Pa. Super. 2001).

---

[7] Although their assertion as framed alleges duress and mutual mistake, Defendants failed to provide any argument regarding these theories in their appellate brief and focus entirely on fraud and the purported lack of notice.

According to Defendants, Avolio only advised them of a possible $500.00 fine for each event in excess of the number permitted in the Consent Order and none of the Defendants reviewed the Consent Order until approximately October 2013. Therefore, Defendants maintain that the trial court's order finding them in contempt constituted an abuse of discretion because Defendants did not have notice of the terms of the specific order they allegedly violated.

Here, Avolio testified that he verbally advised the Nieds of the consequences if they failed to follow the terms of the Consent Order. He also testified that the parties participated in negotiating the terms of the Consent Order. Indeed, Avolio testified that Ms. Nied participated in the negotiation of each and every term of the Consent Order. (R.R. at 347a, 370a-72a.) Moreover, Ms. Nied testified that, the day the Consent Order was entered, she met with Avolio to discuss the number of weddings that would be permitted under the agreement. Ms. Nied further testified that Avolio advised her that, under the proposed agreement, she would not be able to advertise, and could not book new weddings, and the Township requested that she drop her pending land use appeal. According to Ms. Nied, Avolio also advised her regarding the parking and security requirements contained in the Consent Order. (R.R. at 505a-13a.) Similarly, Ms. Nied testified that:

> The only thing that was discussed in regards to attorney's fee or fees was the one that the township could fine me $500.00 maximum if I should hold an additional wedding. And also when we were to negotiate the number of weddings Bill Sitting said, I'll let you have more weddings if you pay my attorney's fees.

(R.R. at 518a.)

Based on this testimony, we discern no abuse of discretion in the trial court's determination finding Defendants in contempt because its determination that

13

Defendants had notice of the Consent Order is not manifestly unreasonable, a misapplication of the law, or the result of partiality, prejudice, bias, or ill will.

Finally, Defendants argue that the trial court's award of attorney's fees was erroneous because part of the award was not related to Intervenors' efforts to enforce the Consent Order. More specifically, Defendants assert that $22,820.00 in fees can be divided into three categories unrelated to the enforcement of the Consent Order: (1) $2,275.00 attributed to a February 26, 2014 Board hearing;[8] (2) $8,920.00 attributed to Defendants' petition to vacate the Consent Order; and (3) $11,625.00 attributed to Defendants' mandamus action.[9]

Intervenors argue that the litigation in question occurred after the Consent Order was executed and involved requests for permission to use the Property for weddings and other related events. According to Intervenors, the trial court's award of attorney's fees was well within its discretion.

"Appellate review of a trial court's order awarding attorney's fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award." *Thunberg v. Strause*, 682 A.2d 295, 299 (Pa. 1996).

---

[8] Ms. Nied testified that the February 26, 2014 Board meeting concerned an application to become a community sustainable agricultural social group, which involved members pre-paying for farm produce. She further testified that Defendants' ability to host weddings at the Property was not the subject of the hearing; however, she was not sure whether her attorney raised the prohibition against weddings at the hearing. (R.R. at 903a-06a, 925a.)

[9] The mandamus action sought deemed approval of a conditional land use application seeking to use the Property as a bed and breakfast and for a social/recreation use based on the fact that the application had not been timely processed. (R.R. at 299a-306a, 880a.)

Paragraph 12 of the Consent Order provides "*Should any enforcement action be brought pursuant to this order* the prevailing party will be entitled to reasonable attorney's fees of other parties." (R.R. at 24a-25a) (emphasis added).

Here, regarding the first category of fees, the February 26, 2014 Board meeting did not arise from an enforcement action brought pursuant to the Consent Order. Rather, the Board meeting concerned an application to become a community sustainable agricultural group. Thus, because fees related to the February 26, 2014 Board meeting did not arise from an enforcement action brought pursuant to the Consent Order and, therefore, did not fall within the scope of Paragraph 12 of the same, the trial court's $2,275.00 award of attorney's fees constituted an abuse of discretion.

Similarly, Defendants' mandamus action, the third category of fees, did not arise from an enforcement action brought under the Consent Order. Instead, Defendants' mandamus action sought deemed approval of a conditional land use application that purportedly had not been timely processed. As such, Defendants' mandamus action did not fall within the scope of Paragraph 12 of the Consent Order and the trial court's $11,625.00 award of attorney's fees in this regard constituted an abuse of discretion.

However, the fees for the second category provide a more compelling case to affirm the trial court's award. The second category of fees was awarded for defending Defendants' petition to vacate the Consent Order. By defending a challenge to the validity of the Consent Order, Intervenors sought enforcement of the Consent Order. Although this litigation was not an enforcement action brought under the Consent Order, it did seek enforcement of the Consent Order. As such, the trial court did not commit a palpable abuse of discretion in awarding $8,920.00 in fees associated with defending Defendants' challenge to the validity of the Consent Order.

15

## Conclusion

Defendants' argument that they were entitled to issuance of a Rule to Show Cause because they established *prima facie* grounds for relief is unpersuasive because the governing Rule provides the trial court with discretion regarding whether to issue a Rule to Show Cause and Defendants' petition did not trigger the non-discretionary procedures. Additionally, the trial court did not commit an abuse of discretion when it found Defendants in contempt because the record contains evidence indicating that Defendants had notice of the order they violated. Finally, the trial court's award of attorney's fees was proper insofar as the award related to Intervenors' defense to the petition to vacate the Consent Order. However, the award of fees pertaining to the February 26, 2014 Board meeting, as well as fees pertaining to Defendants' mandamus action, constituted a palpable abuse of discretion because the respective litigation did not arise from an enforcement action brought pursuant to the Consent Order.

_____
PATRICIA A. McCULLOUGH, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ligonier Township           :
                            :    No. 566 C.D. 2016
              v.            :
                            :
Margaret S. Nied and Paul J. Nied,   :
her husband, and Foxley Farm, LLC,   :
and Christopher Turner and Carolyn   :
Shearer Turner, husband and wife,    :
Donald Korb and Carolyn Roberts      :
Korb, husband and wife, and David    :
Barnhart and Sally Ann Barnhart,     :
husband and wife                     :
                                     :
Appeal of:  Margaret S. Nied, Paul J.   :
Nied and Foxley Farm, LLC            :

# ***ORDER***

AND NOW, this 4th day of May, 2017, the March 8, 2016 order of the Court of Common Pleas of Westmoreland County is affirmed, in part, and reversed, in part, consistent with the foregoing opinion.

_____
PATRICIA A. McCULLOUGH, Judge