669 A.2d 309

Joseph J. BALENT and George Barto, Appellees,

v.

CITY OF WILKES–BARRE, Appellant.

Supreme Court of Pennsylvania.

Submitted Aug. 30, 1995.

Decided Dec. 27, 1995.

556

558

Myles P. McAliney, Scranton, for City of Wilkes–Barre.

Mark A. Ciavarella, Jr., Wilkes–Barre, for Balent et al.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

The City of Wilkes–Barre (City) appeals from the order of the Commonwealth Court of Pennsylvania (Pellegrini, J., dissenting), dated September 22, 1994, affirming the judgment of the Court of Common Pleas of Luzerne County, dated June 9, 1993, which denied the City's motion for post-trial relief and affirmed a jury verdict of $30,000.00 in favor of Joseph J. Balent and George Barto (Owners).

On appeal, the City contends that 1) the Owners' claim is barred under the doctrines of *res judicata* and collateral estoppel, as the City's liability for the razing of the Owners' property was previously litigated in an eminent domain action; 2) the trial judge erred in his jury instructions on the City's liability under 42 U.S.C. § 1983; and 3) the evidence was insufficient to allow the jury to find the City liable under section 1983 for failing to give notice to the Owners before the razing of their building.

On March 9, 1980, the Owners' building sustained considerable structural damage in a fire.

On March 10, 1980, the City mailed a letter to the Owners, ordering them to enclose the building within ten (10) days, and to remedy all violations to comply with Wilkes–Barre Codes or to raze the building by April 9, 1980.[1] The notice also

1. The letter stated, in relevant part:

On *March 9, 1980* fire damaged your building at the above address to such an extent it is a fire, health, and physical hazard to occupants and the public in violation of the Wilkes–Barre City Building Code Ordinance No. 32 of 1976, and Ordinance No. 16 of 1971 of the Wilkes–Barre Housing Code.

informed the Owners that they had ten (10) days to appeal the decision of the Building Inspector to the Board of Appeals. Owners received this notice, but took no action.

As the building continued to deteriorate and the Owners failed to make any repairs to the property, on May 18, 1981, the City sent another notice to the Owners stating that if repairs were not completed by June 26, 1981, the building would be razed by the City.[2] Like the first notice, it informed the Owners that they had ten (10) days to appeal the decision. The City found the PS Form 3800 receipt for the certified mailing of this notice and the PS Form 3811 (green card) that is returned to a sender of certified mail evidencing its receipt.

> You are hereby ordered to have the building enclosed within ten (10) days of this notice and to correct all violations to comply with the Codes of the City of Wilkes–Barre or have the building razed. This work must be completed no later than *April 9, 1980*.
> If this order is not complied with, it will result in legal action which may result in a fine or imprisonment.
> Any person aggrieved by the decision of the Building Inspector may within ten (10) days of this notice appeal to the Board of Appeals for a review of the decision in accordance with the procedures prescribed by the Board.

2. The letter provided, in relevant part:
> At an inspection of the above property on *March 9, 1980 continuous through May 18, 1981* the building(s) at the above address was/were found to have deteriorated to such an extent that they constitute a serious and dangerous hazard to public safety, health and welfare, in violation of Section 108.1 et seq., of the Wilkes–Barre City Housing Code, Ordinance No. 16 of 1971.
> The specific violations are attached to this notice and made a part hereof. You are hereby ordered to have the building(s) enclosed within ten (10) days of this notice and to correct all violations to comply with the Housing Code of the City of Wilkes–Barre or have building(s) razed.
> This work to be completed no later than *June 26, 1981*.
> If this order is not complied with on or before *June 26, 1981* the property will be razed by the City of Wilkes–Barre under Wilkes–Barre City Housing Code Ordinance No. 16 of 1971.
> All costs incurred due to the City's razing of the property shall be a municipal lien against the aforementioned property.
> ANY PERSON AGGRIEVED BY THE DECISION OF THE INSPECTOR MAY WITHIN TEN (10) DAYS FROM THE RECEIPT OF THIS NOTICE APPEAL TO THE BUILDING BOARD OF APPEALS OF THE CITY OF WILKES–BARRE FOR REVIEW OF THE DECISION IN ACCORDANCE WITH THE PROCEDURES PRESCRIBED BY THE BOARD.

The green card was postmarked May 20, 1981, but it was not signed by the Owners. The Owners deny receiving this notice.

On June 3, 1981, the City sent a third violation notice to the Owners, indicating that the repairs to or destruction of the building must be completed no later than June 10, 1981. This notice did not contain a warning that the building would be razed by the City if repairs were not completed. Moreover, the section discussing the right to appeal was marked out of the letter. However, the violation list attached to the notice specifically stated that "THIS NOTICE *DOES NOT* SUPER-CEDE VIOLATION NOTICE ISSUED 5–18–81." The Owners received this notice, but did not take any action to make the requisite repairs or to attempt to discover the contents of the May 18, 1981, violation notice referenced in the letter.

As of December, 1981, the Owners still had not made any repairs to the property. This fact coupled with vandalism, rotting wood and wind damage made the building unsafe and an immediate hazard. Consequently, on December 14, 1981, the City contracted to have the building razed. This action was taken pursuant to the emergency provision of the Wilkes–Barre Code which provides that if the City finds that a building constitutes an immediate danger, it shall take immediate action to render the structure safe.[3]

The Owners filed a Petition for the Appointment of Viewers in the Court of Common Pleas of Luzerne County at No. 2167–C–1982, alleging that the demolition of their building was a *de facto* taking. The City filed preliminary objections in the nature of a demurrer. The trial court sustained the objections and dismissed the petition. The court held that the City's

---

3. The emergency provision of Ordinance No. 32 of the Wilkes–Barre Code, Wilkes–Barre, Pa., Code § 7–23, Ord. No 32–76, § 1 (1976), provides:

*Emergency Work.* In case there shall be, in the opinion of the building inspector's office, actual immediate danger of failure or collapse of a building or any part thereof so as to endanger life or property, the building inspector's office shall cause the necessary work to be done to render said building or structure or part thereof, temporarily safe, whether the procedure prescribed in this section has been instituted or not.

demolition of the building was not a compensable *de facto* taking, but rather a noncompensable exercise of the police power under City Ordinance No. 32 of 1976. The Owners appealed to the Commonwealth Court at No. 2180 C.D. 1983, which affirmed the trial court's decision. *Balent v. City of Wilkes–Barre*, 89 Pa.Commw. 578, 492 A.2d 1196 (1985) (*Balent I* ). This Court denied the Owners' petition for allowance of appeal at No. 792 E.D. Allocatur Docket 1985.

The Owners then filed the instant action under section 1983.[4] They alleged that the action taken by the City in demolishing their building deprived them of a right, privilege and immunity secured by the Fifth and Fourteenth Amendments of the United States Constitution. They base their claim on the failure of the City to verify the receipt of the violation notice dated May 18, 1981, which stated that their building would be razed by the City, if they did not make the requisite repairs.

The City filed an answer and, subsequently, a motion for summary judgment, asserting that the Owners' claim was barred by either *res judicata* or collateral estoppel, based on the Owners' unsuccessful eminent domain action. The trial court denied the motion, and the case proceeded to a jury trial in February, 1992. The jury awarded the Owners $30,000.00 in damages, finding that the Owners' rights under the United States Constitution were violated.

On appeal, the City alleged that the trial court erred as a matter of law in instructing the jury that Joseph Chabala, the City's Chief Housing and Zoning Officer (Chief Housing Officer) was a policymaker or that any of his actions could be considered to have instituted a policy. It contended that the Chief Housing Officer could not be considered a policymaker, because the City's policy is contained in the Wilkes–Barre

4. Section 1983 provides, in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... 42 U.S.C. § 1983.

Housing Code which requires that notice be given to all property owners before any property is destroyed, absent a finding of emergency circumstances. The City contended that the evidence showed that this was the only time that a violation notice had not been received; therefore, the Owners merely established that there was an inadvertent mistake, not an established policy not to perfect notice.

The Commonwealth Court found that neither *res judicata* nor collateral estoppel applied to the cause of action. It found that the prior action involved an *in rem* eminent domain proceeding, holding that an otherwise valid exercise of police power does not effectuate a constitutional taking of property for public use. *Balent I,* 89 Pa.Commw. at 581, 492 A.2d at 1197. It also found that the instant action was based on theories of trespass and constitutional torts and raises the issue of whether the police power was actually validly exercised. It concluded that the eminent domain action did not litigate nor decide the issue of whether the Owners' constitutional rights to due process under the Fifth and Fourteenth Amendments were violated; therefore, the instant action was not barred. The court also found that based on the evidence, a jury could find that the Chief Housing Officer was a high-ranking, policy-making official for whose actions the jury could impute municipal liability to the City. Moreover, it found that a jury could find a pattern or series of acts by the City which denied the Owners their constitutional rights. Accordingly, it affirmed the jury verdict in favor of the Owners.

 *Res judicata,* or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). *Res judicata* applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action. *Id.*

■ Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated. *Id.* The identical issue must have been necessary to final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party, to the prior action and must have had a full and fair opportunity to litigate the issue in question. *Id.* at 94–95, 101 S.Ct. at 414–415.

The City contends that the trial court's dismissal of the eminent domain action in *Balent I* bars the instant section 1983 action, or, at least, bars re-litigation of certain issues. The court in *Balent I* held that the building in question was demolished under the City's police power and not under its power of eminent domain[5]; therefore, no compensation was required.

A majority of the Commonwealth Court refused to apply either of these doctrines, stating that the two actions were based on different theories—first, a claim for an unconstitutional taking under an eminent domain statute, and, second, a claim for trespass and constitutional torts under section 1983. *Balent v. City of Wilkes–Barre,* 167 Pa.Commw. 556, 563, 648 A.2d 1273, 1276 (1994). But, as Judge Pellegrini noted in his dissenting opinion, the majority's rationale implies that section 1983 gives rise to a right different than the underlying federal right that the Owners are claiming was denied, and, therefore, the action litigating that right does not have a preclusive effect. *Id.* at 579, 648 A.2d at 1284.

■ In *Urbanic v. Rosenfeld,* 150 Pa.Commw. 468, 616 A.2d 46 (1992), the court explained:

[A] Section 1983 action does not create any substantive rights, but merely serves as a "vehicle or ... 'device' by which a citizen is able to challenge conduct by a state official

---

5. A *de facto* taking case is filed under Section 502 of the Eminent Domain Code, 26 P.S. § 1–502. It requires a property owner to establish that an entity clothed with the power of eminent domain has taken his property without first filing a declaration of taking. *Appeal of Miller,* 55 Pa.Commw. 612, 423 A.2d 1354 (1980).

whom he claims has deprived or will deprive him of his civil rights." Harry Blackmun, *Section 1983 and Federal Protection of Civil Rights—Will the Statute Remain Alive or Fade Away?*, 60 N.Y.U.L.Rev. 1, 1 (1985).

150 Pa.Commw. at 479, 616 A.2d at 52. Thus, in order to maintain a cause of action under section 1983, a plaintiff must establish that he has been deprived of some cognizable federal right by someone acting under color of state law. *Id.* (citations omitted). If a claim or issue related to that federal right has been determined in a prior adjudication, the established rules of *res judicata* and collateral estoppel apply. *Allen,* 449 U.S. at 105, 101 S.Ct. at 420.

■ Essentially, the question in this case is whether the City unconstitutionally exercised its police power when it demolished the Owners' building under the emergency provisions of the Building Code, and whether this claim was or should have been litigated in *Balent I.*

■ Eminent domain is the power to take property for public use. The City must provide just compensation for any property taken pursuant to this power. The police power, on the other hand, involves the regulation of property to promote the health, safety and general welfare of the people. *White's Appeal,* 287 Pa. 259, 134 A. 409 (1926). It does not require that the City provide compensation to the property owner, even if the property is damaged or destroyed. *Id.*

■ The taking of property, whether it be under the City's police power or under the eminent domain provisions, is subject to the Constitutional mandates of the Fifth and the Fourteenth Amendments. Under the Fourteenth Amendment, property cannot be taken except by due process of law. However, regulation under a proper exercise of the police power is due process, even though property in whole or in part is taken or destroyed. *Id.* at 254, 134 A. at 411. As the court in *White's Appeal* appropriately stated:

No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination to the right of its reason-

able regulation by the government clearly necessary to preserve the health, safety or morals of the people. Obedience to such regulation is not taking property without due process; that clause does not qualify the police power. (citations omitted). Property is held under the implied obligation that the owner shall use it in such way as not to be injurious to the community.

287 Pa. at 265, 134 A. at 411–12. The conditions on which exercise of police power is predicated should actually exist or be so likely that action is necessary. *Id.* Moreover, there should be a reasonable and substantial relation between the thing acted on and the end to be attained. *Id.*

■■■■ If there is doubt as to whether the statute is enacted for a legitimate police object, or if, conceding the statute's purpose, its exercise goes too far, then the judiciary has a duty to declare the given exercise of the police power invalid. *Id.* at 265, 134 A. at 411. Judicial investigation into the validity of the police power should not scrutinize the wisdom of the policy emanating from the legislative branch, or whether the best means of achieving the desired result have been selected. *Id.* The court should examine only whether the statute has a recognized police purpose, and whether the purpose has a reasonable relation to the object to be attained. *Id.*

■■■■ Under *res judicata*, the Owners are barred from litigating claims that were or could have been raised in the prior action which resulted in a final judgment on the merits, so long as the claims derive from the same cause of action. *Allen*, 449 U.S. at 94, 101 S.Ct. at 414. As courts have often recognized, the purpose of this doctrine is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudications. *Id.*

■■■■ In *Balent I*, the court analyzed the Owners' action for compensation under the City's eminent domain and police powers, both claims having their basis in the Constitution. In the instant action, the Owners attempt to ground their claim

in the Constitution directly. Granted, while the first action technically can be classified as an *in rem* proceeding and the second an *in personam* proceeding, this distinction is merely a technical one. Both actions involve compensation for the same property and the same exercise of power by the City. The Owners' cause of action involves a determination of which power the City exercised and whether that power was validly exercised, this second determination being a Constitutional analysis as to whether the City acted reasonably to accomplish a legitimate police objective.

 In the majority opinion in *Balent I*, the court recognized that only actions taken under a valid exercise of police power result in a non-compensable taking. Without delineating its analysis, the majority simply held that the Owners' building was demolished pursuant to the City's police power and that it did not constitute a compensable taking. Nonetheless, we must assume that the court properly considered the constitutional implications, before making its final determination that the taking was non-compensable.

Furthermore, as both claims are derived from the same cause of action—compensation for the destruction of the Owners' building—separate actions would require that the parties rehash the facts and legal arguments presented in *Balent I*, exactly the type of situation that the doctrine of *res judicata* is designed to avoid.

Therefore, the Commonwealth Court erred by affirming the trial court's denial of the City's motion for summary judgment and the Owners' present action under section 1983 is barred under the theory of *res judicata*. Based on this determination, it is unnecessary for us to analyze Appellant's other allegations of error.

Accordingly, we reverse the order of the Commonwealth Court, and dismiss the case.

NIX, C.J., concurs in the result.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).