# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE, AND HON. STEPHEN ZAPPALA, SR., | : | No. 100 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated October 5, |
| Appellants | : | 2016 at No. 517 MD 2016. |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appellee | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE WECHT**                                         **DECIDED: October 25, 2016**

This Court recently considered—but deadlocked on—a challenge to the wording of the November 2016 general election ballot question. That question asks voters whether the judicial retirement age mandated in our Constitution should be amended. Appellants alleged that the ballot question as drafted misleads and deceives voters into believing that they are imposing a mandatory retirement age for the first time, when in fact a "yes" vote would *raise* the existing judicial retirement age from 70 to 75. Appellants sought to enjoin Appellee Cortés from issuing general election ballots that contain the deceptively worded question.

Although this Court assumed plenary jurisdiction over Appellants' action pursuant to 42 Pa.C.S. § 726, we did not (indeed, we could not) issue a final decision on the merits. As explained in our September 2 order, three Justices favored denying

Appellants' application for relief and dismissing the complaint with prejudice, while the other three Justices would have granted Appellants' application for relief and permanently enjoined Appellee from placing the challenged language on the ballot.[1] Being equally divided, we stood deadlocked on the merits of the dispute. Our unanimous *per curiam* order accordingly noted that "this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained." *Per Curiam* Order, 9/2/2016, at 1.

In view of our deadlock, Appellants pursued merits adjudication by refiling their complaint for declaratory and injunctive relief in the Commonwealth Court. That court dismissed the complaint, holding that the doctrine of *res judicata* bars Appellants from litigating their still-unadjudicated constitutional challenge. In defending that dismissal, the Opinion in Support of Affirmance ("OISA") misconstrues our *failure* to resolve Appellants' challenge on the merits as an *adjudication* on the merits. It is nothing of the kind. I disagree with the OISA's view, which attempts incorrectly to deploy our September 2 deadlock as a bootstrap to affirm the Commonwealth Court, notwithstanding our utter inability to reach a decision on the merits of the parties' dispute.

The doctrine of *res judicata*, also known as claim preclusion, bars a subsequent action between the same parties on any claim that was the subject of an earlier adjudication on the merits. Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995) ("Any final, valid judgment on the merits by a court of competent jurisdiction precludes

---

[1] See Sprague v. Cortés, 2016 WL 4595403 (Pa. 2016); Opinion In Support Of Denying Plaintiffs' Application For Summary Relief And Granting Defendant's Application for Summary Relief (Baer, J.); Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application for Summary Relief (Todd, J.); Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application For Summary Relief (Wecht, J.).

any future suit between the parties or their privies on the same cause of action." (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)). The dispositive question here is whether our September 2 order constituted a full and final adjudication of Appellants' constitutional challenge. It plainly did not.

I agree with the Commonwealth Court that the claims at issue and the parties *sub judice* are identical to those in the prior litigation. See Sprague v. Cortés, 517 M.D. 2016, slip op. at 6. Nevertheless, *res judicata* does not bar Appellants from litigating their claims, because neither this Court nor any other court has finally adjudicated Appellants' constitutional challenge to the wording of the November ballot question. See County of Berks ex rel. Baldwin v. Penna. Labor Relations Bd., 678 A.2d 355, 359 (Pa. 1996) ("It is axiomatic that in order for . . . *res judicata* to apply, the issue or issues must have been actually litigated and determined by a valid and final judgment.").[2]

*Res judicata* expresses a jurisprudential principle designed to avoid never-ending litigation. It embraces the common sense proposition that a claim finally settled by a

---

[2] In an attempt to obscure our decisional deadlock and expand our September 2 order into a final adjudication on the merits, the OISA invokes a decision of the United States Supreme Court that does not support the OISA's position.

Specifically, the OISA relies upon Hartman v. Greenhow, 102 U.S. 672 (1880), a case that does not concern, discuss, or even mention the doctrine of *res judicata*. See OISA at 8. Although Hartman involved an equally divided state court, it did not address any preclusive effect of that deadlock. Instead, the issue in Hartman was whether the United States Supreme Court had jurisdiction over the appeal, *i.e.*, whether it was a "final judgment or decree" as defined by the Judiciary Act of 1789. Id. at 674. The portion of Hartman quoted by the OISA (see OISA at 8) simply explains why the state court's deadlock was amenable to the U.S. Supreme Court's jurisdiction.

Beyond that, the OISA is left with little but its own conclusory assertion that our opinion "completely ignores" the "final judgment" in this case (Id. at 10), a "final judgment," such as it is, which does not adjudicate the lawsuit's claims. But just in case, suggests the OISA, Appellants' inability to obtain an adjudication here is, after all, somehow their own fault, the "result of their own tactical litigation plan." Id. at 11.

court of competent jurisdiction remains settled. *Res judicata* addresses the law's need for finality and precludes multiplicity of actions upon identical questions.[3] What the doctrine does not do is encroach upon a litigant's fundamental right to have his or her case decided on the merits.

As the debate over the starkly misleading November ballot language intensifies in the court of public opinion, today's reappearing deadlock denies Appellants their right to a merits decision by the courts of this Commonwealth. As written, the ballot question is patently deceptive (apparently by design), thereby depriving Pennsylvania voters of their inalienable right to amend our Constitution as they see fit. Many share my concerns, including (it seems) half the voting Justices of this Court, Secretary Cortés himself (at least at one point),[4] and numerous commentators.[5]

---

[3]     The OISA ignores the obvious fact that not all "final" decisions are preclusive for *res judicata* purposes. It bears repeating that *res judicata* applies only when there has been a final adjudication **on the merits**. See Balent, 669 A.2d at 313. For example, this Court has held that our denial of an application for extraordinary relief is not a final adjudication **on the merits**, and "the petitioning party is free to pursue his claim in any appropriate forum." County of Berks ex rel. Baldwin, 678 A.2d at 359. Similarly, when we issue an order explaining that "this Court is without authority to grant relief" to either party (*Per Curiam* Order, 9/2/2016, at 1), we have not fully and finally adjudicated the litigants' claims on the merits.

The OISA distinguishes County of Berks ex rel. Baldwin from the instant matter on the basis that we assumed plenary jurisdiction over Appellants' action and the parties "litigated the issues through briefing." OISA at 10. That is irrelevant. The critical inquiry is whether our September 2 order was a full and final merits adjudication of Appellants' constitutional challenge. The OISA concedes that "the Court issued multiple opinions on the legal issue presented," none of which gained the support of a majority of the Justices. Id. at 11. How this Court managed to adjudicate Appellants' claim on the merits while simultaneously failing to resolve "the legal issue presented" is beyond my understanding.

[4]     In a prior filing of record, Appellee Cortés himself took the position that failing to inform voters that the current judicial retirement age is 70, "would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is currently no requirement at all." See Answer of Secretary of the Commonwealth Pedro A. Cortés, 29 MM 2016. For reasons unknown and undisclosed, (continued…)

A recent poll conducted by Franklin & Marshall College reveals, as many had assumed, that the ballot question's misleading language places a heavy thumb on the scales of the amendment process.[6]  The polling indicates that 64% of registered voters would vote "yes" to the question that will appear on the November ballot.  But support for the amendment nosedives an astounding nineteen points to 45% when voters are presented with the question as Secretary Cortés himself originally phrased it, *i.e.*, when voters are informed that in fact a judicial retirement age does currently exist and that it is 70.[7]

(…continued)
Secretary Cortés seems to have changed his mind quite completely.  Nonetheless, the OISA has exaggerated the Secretary's role here by asserting that he "framed" the misleading ballot question.  OISA at 1.  He did not frame it; indeed, he initially opposed it, and then later chose to acquiesce in it.  The distinction for artful draftsmanship is owed not to the Secretary but to the General Assembly.  See H.R. 783 2015 (directing the Secretary to remove the previously drafted ballot question from the April 26, 2016 primary election ballot and to place the language now at issue on the November 8, 2016 general election ballot).

[5]    See, e.g., Vote 'No' on Question to Raise Judges' Retirement Age, PHILLY, http://www.philly.com/philly/opinion/editorials/20161011_DN_editorial__Vote__No__on_question_to_change_judges__retirement_age.html ("We agree with those who filed the suits challenging the wording of the ballot question.  We believe it is deceitful—and deliberately so, designed to bamboozle voters[.]") (last visited Oct. 20, 2016); Howard J. Bashman, Lessons From Pa.'s Judicial Retirement Age Ballot Fiasco, THE LEGAL INTELLIGENCER, http://www.thelegalintelligencer.com/id=1202769603634/Lessons-From-Pa-S-Judicial-Retirement-Age-Ballot-Fiasco/?slreturn=20160920113149 ("Pennsylvania's legislature has devised a masterful strategy to avoid the defeats experienced in numerous other states when voters are asked whether existing judicial mandatory retirement ages should be increased—simply don't tell voters that the constitutional amendment will have the effect of increasing the mandatory judicial retirement age.") (last visited Oct. 20, 2016).

[6]    Berwood A. Yost, For the Nov. 8 Ballot Question About Changing Pa. Judges' Retirement Age, Words Matter, PENNLIVE, http://www.pennlive.com/opinion/2016/10/for_the_nov_8_ballot_question.html (last visited Oct. 20, 2016).

[7]    The OISA criticizes our reference to polling and commentary.  OISA at 11-12.  This critique misconstrues our use of these sources.  As the OISA itself recognizes (id.
(continued…)

It is imperative that Pennsylvania's judiciary decide whether our Constitution tolerates a demonstrably misleading ballot question.[8]  The question has been asked.  It has not been answered.  See Marbury v. Madison, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

---

(…continued)

at 2), today's dispute concerns a question of law: to wit, whether our September 2 *per curiam* order precludes Appellants' right to a merits adjudication on *res judicata* grounds.  The material facts are undisputed.  The litigation before us addresses a matter of substantial public importance and notoriety.  In such circumstances, it is not only proper but indeed expected that jurists will marshal secondary sources (law review articles, news reports, commentary, etc.) to persuasive effect.  There is no evidentiary record here which Justices of this Court can either refine or improve.  There is a disagreement on a question of law.  In this disagreement, jurists will employ the tools that are appropriate to the persuasive task at hand.

> We see here a perfect illustration of the importance of context.  The argument is over the facts but not over the record.  The opinions are trying to persuade us to put the dispute in one context rather than another.  Until we do that, we don't know which law applies; we don't know how to construct analogies or make distinctions. . . .  Once we leave the domain of proof and enter that of persuasion, there is not a great deal that can be said in the abstract.  What counts as persuasive depends on both the speakers and the listeners; it shifts over time and depends on the circumstances.  It depends as well on the ability to present the case in a compelling manner.  The court, like the rest of us, must be persuaded.

PAUL W. KAHN, MAKING THE CASE: THE ART OF THE JUDICIAL OPINION 146 (Yale Univ. Press 2016).

[8]  The point is not that judges are unfit to serve after age 70.  The legacies of Holmes, Brandeis, and countless other stars that shine in the judicial firmament suggest otherwise.  The point is that our Constitution does not permit the General Assembly to load the dice, to hoodwink or infantilize the voters by crafting a ballot question calculated to deceive and mislead.  See Opinion in Support of Granting Plaintiffs' Application For Summary Relief And Denying Defendant's Application For Summary Relief (Wecht, J.), at 1-5 (September 2, 2016) (discussing requirements of constitutional amendment process).

Appellants turned to our courts with one straightforward question: Does the November ballot, as worded, violate Pennsylvania's Constitution? Today's decision prevents Appellants from receiving an answer to that question. They are entitled to one.

I would reverse the Commonwealth Court, and I would remand for further proceedings.

Justices Todd and Dougherty join this opinion.