# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Key, : 
          Petitioner : 
  : No. 62 M.D. 2022
       v. : 
  : Submitted: February 4, 2025
Pennsylvania Department of : 
Corrections, : 
          Respondent : 

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                **FILED: March 5, 2025**

Petitioner Brandon Key (Petitioner), who is currently incarcerated within our Commonwealth's prison system, has filed an original jurisdiction petition for review (PFR), through which he challenges certain aspects of Respondent Pennsylvania Department of Corrections' (Respondent) mail handling procedures and seeks declaratory judgments declaring those procedures unlawful. Respondent has now filed an "Application for Summary Relief in the Form of a Motion for Judgment on the Pleadings" (MJP), through which it requests judgment in its favor regarding Petitioner's claims. Upon review, we deny Respondent's MJP.

# I. BACKGROUND[1]

Generally speaking, Respondent's treatment of inmate correspondence is governed via administrative regulation, which has been codified as 37 Pa. Code § 93.2.[2] Therein, Respondent has articulated rules regarding the handling of

---

[1] We draw the substance of this section from the PFR and Respondent's Answer with New Matter, as well as from the opinion we issued in 2023, through which we overruled Respondent's preliminary objections to the PFR. *See generally* PFR; *Key v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 62 M.D. 2022, filed May 8, 2023), 2023 WL 3295859 (*Key I*). For a more detailed articulation of the facts that gave rise to this action, we direct interested readers' attention to our *Key I* opinion.

[2] This administrative regulation states, in relevant part:

(a) Permitted correspondence. Inmates are permitted to correspond with friends, family members, attorneys, news media, legitimate business contacts and public officials. There may be no limit to the number of correspondents.

(b) Restrictions. The following restrictions apply:

(1) Correspondence with inmates of other facilities, former inmates, probationers or victims of the criminal acts of the inmate will not be permitted except upon approval of the facility manager or a designee.

(2) Correspondence containing threatening, obscene or explicit sexual material, or nudity as well as correspondence containing criminal solicitation or furthering a criminal plan or institution misconduct is prohibited.

(3) An inmate shall refrain from writing to persons who have stated in writing that they do not wish to receive mail from the inmate. This will not be interpreted to restrict the right of inmates to correspond with public officials with respect to the official duties of the latter.

(4) Correspondence with prohibited parties through a third party is also prohibited.

(5) Mail addressed to an inmate organization will not be accepted unless the facility manager and [the] Secretary [of Corrections] have approved the organization and it is addressed to the staff coordinator of the organization.

. . . .

(f) Rejection of correspondence. An item of correspondence which appears to violate subsection (b) may be rejected by facility mailroom staff. The inmate and the sender, in cases when the inmate is not the sender, will be notified when the letter is rejected. The letter will be held for at least 7 business days after mailing

"incoming letters, photographs, etc., sent to inmates from outside the . . . facilities [in which the inmates are incarcerated]." PFR, ¶4; *see* 37 Pa. Code § 93.2. Respondent has also distilled its interpretation of this regulation into a policy statement, DC-ADM 803.[3] In 2018, Respondent amended DC-ADM 803 to add language declaring that inmates are barred from receiving original photographs through the mail but will instead be provided with copies of any such materials. This

of the notification to permit reasonable opportunity to protest the decision. If the letter is rejected, it will be returned to the sender.
(g) Incoming publications.
. . . .
(2) Publications shall be received directly from a publisher, bookstore, book club, distributor or department store. Newspapers shall be mailed directly from the publisher.
(3) Publications may not be received by an inmate if they:
(i) Contain information regarding the manufacture of explosives, incendiaries, weapons, escape devices, poisons, drugs or intoxicating beverages or other contraband.
(ii) Advocate, assist or are evidence of criminal activity, inmate misconduct, violence, insurrection or guerrilla warfare against the government.
(iii) Threaten the security of a facility.
(iv) Contain nudity, obscene material or explicit sexual materials as defined in subsection (i).
(v) Constitute a bulk mailing specifically intended for the purpose of advertising or selling merchandise.
. . . .
(5) A publication will not be prohibited solely on the basis that the publication is critical of penal institutions in general, of a particular facility, staff member, or official of [Respondent], or of a correctional or penological practice in this or any other jurisdiction.
. . . .
(8) Covers of hardbound publications may be damaged or removed during inspection in the discretion of mailroom staff.
. . . .
37 Pa. Code § 93.2(a)-(b), (f), (g)(2)-(3), (5), and (8).

[3] DEP'T OF CORR., DC-ADM 803 (2020), https://pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf (last visited March 4, 2025).

was done as part of a broader change to Respondent's mail handling process, whereby all non-privileged incoming inmate mail is diverted before delivery to Smart Communications, a third-party vendor, which then forwards copies of the original materials to the intended recipient. Currently, DC-ADM 803 does not address whether those copies must contain a certain image quality or show true fidelity to the original.

Petitioner takes issue with two aspects of Respondent's handling of his mail, specifically with regard to Respondent's treatment of incoming photographs and the adequacy of the notice provided by Respondent to affected inmates when incoming mail has been rejected. With regard to the former, Petitioner avers that Respondent has been providing him with "overly darkened" copies of incoming mail since 2018. PFR, ¶17. Petitioner claims that these copies are often so dark that the details of the images they contain are not visible. Accordingly, he asserts in Count I of his PFR that Respondent's policy of providing inmates with poor quality photograph copies constitutes an absurd and unreasonable interpretation of 37 Pa. Code § 93.2. As for the latter, Petitioner maintains that Respondent has repeatedly rejected incoming mail without giving him adequate notice or an opportunity to challenge the rejection. On that basis, he maintains in Count II that Respondent's failure to institute a proper notice and challenge policy violates its administrative regulations, Pennsylvania law, and the Fourteenth Amendment's Due Process Clause.[4]

Respondent initially challenged the PFR via preliminary objections. We overruled those preliminary objections in May 2023 and directed Respondent to

---

[4] U.S. CONST. amend. XIV § 1.

answer the PFR. Respondent complied with our directive and, thereafter, filed the instant MJP in April 2024, to which Petitioner subsequently responded in opposition.

## II. DISCUSSION

Respondent offers several arguments in support of its MJP, which we reorder and summarize as follows.[5] First, Respondent maintains that Petitioner's claims are barred by technical *res judicata* and collateral estoppel,[6] due to Petitioner's failure to assert those claims through a prior original jurisdiction action that he filed against Respondent approximately five years ago, as well as our subsequent disposition of that suit. Respondent's Br. at 14-18. Second, Respondent

---

[5]    When ruling on a motion for judgment on the pleadings, we view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted are considered against the opposing party. We consider only the pleadings themselves and any documents properly attached to them[, and will] grant judgment on the pleadings only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law.

*Stilp v. Gen. Assembly*, 929 A.2d 660, 662 (Pa. Cmwlth. 2007) (cleaned up). "Such a motion may be granted only where the law is clear that a trial would be a fruitless exercise." *Stoppie v. Johns*, 720 A.2d 808, 809 (Pa. Cmwlth. 1998).

[6] These concepts jointly comprise the doctrine of *res judicata*, which "prevents the relitigation of claims and issues in subsequent proceedings." *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001). Technical *res judicata* "is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). "[It] applies only when there exists a "coalescence of four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued." *Robinson v. Fye*, 192 A.3d 1225, 1231 (Pa. Cmwlth. 2018) (cleaned up). Technical *res judicata* "applies not only to claims [that were] actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Balent*, 669 A.2d at 313. As for collateral estoppel, "[it] prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." *Id.* Collateral estoppel may be successfully invoked "if, in a prior suit, these same issues were necessary to a final judgment on the merits . . . and the party against whom [it] is asserted was a party, or was in privity with a party to the prior action and had a full and fair opportunity to litigate the issue in question." *Robinson*, 192 A.3d at 1232.

5

asserts that it is entitled to judgment as a matter of law regarding Count I, because 37 Pa. Code § 93.2 does not apply to Petitioner's situation and DC-ADM 803 does not represent an unreasonable interpretation of that regulation. *Id.* at 10-14. Finally, Respondent contends that Count II has been rendered moot, because it adopted and implemented a policy in 2022 by which prison personnel have been directed to notify affected inmates whenever their mail has been rejected, in response to the United States Court of Appeals for the Third Circuit's decision in *Vogt v. Wetzel*, 8 F.4th 182 (3d Cir. 2021). *Id.* at 19.

Respondent's first argument is misplaced. It is true that Key predicated his prior action upon the purported failure of DC-ADM 803 to comport with the requirements of 37 Pa. Code § 93.2, and specifically used that action to challenge Respondent's handling of rejected incoming mail. *See Key v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 521 M.D. 2020, filed Aug. 3, 2021), slip op. at 6-8, 2021 WL 3354888, at *3-*4. However, those prior claims were based upon Petitioner's assertion that DC-ADM 803 was in technical noncompliance with 37 Pa. Code § 93.2 in 2020, due to the policy's lack of express language stating that an inmate will both be notified when incoming mail has been rejected and have an opportunity to challenge that rejection. *Id.*, slip op. at 4, 2021 WL 3354888, at *3. This is distinct from Petitioner's current claim in Count II, through which he asserts that Respondent continues *in practice* to contravene the dictates of 37 Pa. Code § 93.2, despite its adoption in 2022 of an updated notification policy, and has yet to revise DC-ADM 803 to provide clearer guidance in spite of years-old promises to do so. *See* PFR, ¶¶32-39. As for Count I, the claim Petitioner raises therein is new, in that he did not raise similar arguments in his 2020 action. Furthermore, Petitioner could not have raised this claim at an earlier point, due to the fact that he did not exhaust his

6

administrative remedies regarding Respondent's treatment of incoming photographs until November 16, 2021, more than three months after we disposed of his 2020 action. PFR, ¶¶11-17, Ex. I; *see Humphrey v. Dep't of Corr.*, 939 A.2d 987, 993 (Pa. Cmwlth. 2007) (inmate must exhaust administrative remedies prior to filing suit against Respondent, subject to extremely limited exceptions). Consequently, we conclude that neither of Petitioner's claims in his current lawsuit are barred by either technical *res judicata* or collateral estoppel.

Moving on, we conclude that Respondent's second argument is also without merit. Respondent predicates this argument on two assertions: first, 37 Pa. Code § 93.2 is inapplicable to Petitioner's claim in Count I, because it does not govern third-party vendors like Smart Communications; and second, DC-ADM 803 is not inconsistent with 37 Pa. Code § 93.2, because that administrative regulation does not explicitly address incoming photographs in general or expressly require that inmates be provided with reproduced images of a certain quality. Respondent's Br. at 11-14. The first assertion is baseless, as it would be absurd to allow Respondent to dodge the strictures imposed by its own regulations simply because it has hired an outside, off-site contractor as an intermediary for processing incoming mail. *See DeNaples v. Pa. Gaming Control Bd.*, 178 A.3d 262, 267 n.1 (Pa. Cmwlth. 2018) (courts must defer to "an agency['s] interpretation of its regulation . . . unless [that interpretation is] clearly erroneous, inconsistent with the regulation or statute, or unreasonable"). As for the second assertion, 37 Pa. Code § 93.2 includes provisions that clearly reflect Respondent's recognition that photographs can constitute a component of inmate correspondence. *See* 37 Pa. Code § 93.2(h)-(i) (authorizing Respondent to decide whether to allow inmates to receive certain "[c]orrespondence and publications containing nudity, explicit sexual material[,] or obscene

7

material[,]" and stating that photographs can constitute such explicit sexual or obscene material). Given this, we cannot say with legal certitude at this juncture that Respondent can comply with the dictates of 37 Pa. Code § 93.2 by, as Petitioner asserts, "employ[ing] a copying process that does such *damage* to the photo images as to routinely make them unviewable [sic]." PFR, ¶21 (emphasis in original).

Finally, we are unpersuaded by Respondent's contention that Count II has been rendered moot by virtue of its adoption of an updated notification policy. "[A] claim of mootness . . . stands on the predicate that a subsequent change in circumstances has eliminated the controversy so that the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect." *Burke ex rel. Burke v. Indep. Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014). Again, Petitioner asserts that Respondent continues to reject incoming mail without providing inmates with adequate notice, despite its adoption of that policy. *See* PFR, ¶¶27-39. An active controversy therefore still exists regarding Count II, which precludes us from deeming that claim moot.

### III. CONCLUSION

In accordance with the foregoing analysis, we deny Respondent's MJP.

_____
**LORI A. DUMAS, Judge**

8

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Brandon Key,                                          :
             Petitioner                    :
                                             :  No. 62 M.D. 2022
             v.                             :
                                               :
Pennsylvania Department of                  :
Corrections,                                            :
             Respondent                   :

## O R D E R

AND NOW, this 5th day of March, 2025, it is hereby ORDERED that Respondent Pennsylvania Department of Corrections' "Application for Summary Relief in the Form of a Motion for Judgment on the Pleadings" is DENIED.

_____
**LORI A. DUMAS, Judge**