J-S35017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                     :            PENNSYLVANIA
                     :
            v.               :
                     :
                     :
BOOKER LEON CARTER           :
                     :
           Appellant     :    No. 336 MDA 2025

Appeal from the Order Entered February 5, 2025
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002407-2005

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:          **FILED NOVEMBER 18, 2025**

Booker Leon Carter (Appellant) appeals from the trial court's order[1] denying his motion for DNA testing pursuant to 42 Pa.C.S.A. § 9543.1. After careful review, we affirm.

This Court summarized the facts underlying Appellant's conviction in a prior appeal:

> On the evening of April 14, 2005, [the female victim] was visiting with friends Richard Carver [(Carver)] and [Appellant]. At about 10:50 p.m., while downloading music in Carver's bedroom, [Appellant] and Carver suddenly and[,] without a word[,] grabbed

---

[1] Our Supreme Court has directed that the court ruling upon a request for post-conviction DNA testing should be referred to as the "trial court," as opposed to the Post Conviction Relief Act ("PCRA") court, *see* 42 Pa.C.S.A. §§ 9541-9546, because "requests for DNA testing are distinct from petitions filed under the PCRA, and because [42 Pa.C.S.A. §] 9543.1 directs that the applicant file the motion for DNA testing in the court that imposed the applicant's sentence." ***Commonwealth v. Hardy***, 337 A.3d 385, 400 n.54 (Pa. 2025).

[the victim] and threw her onto the bed. While restraining [the victim], Carver put his knees on her chest and hit her several times with a closed fist on her head and face. [The victim] testified that she tried to get away but was beaten further in response.

While Carver repeatedly hit [the victim], [Appellant] removed [the victim's] pants and underwear and raped [the victim]. As [Appellant] raped [the victim], Carver continued to punch [the victim] in the head and face. On direct examination, [the victim] testified that she never heard Carver make any threats to [Appellant]. However, on cross-examination, [the victim] testified that she heard Carver state to [Appellant] prior to the rape, "Fuck her or I'll kill you." (N.T. Trial, 02/21/06, at 40).

After [Appellant] assaulted [the victim], Carver flipped [the victim] onto her stomach, covered her head with a blanket, and continued to hit her. Carver suddenly stopped, left the bedroom, and came back with two butcher knives. [The victim] heard Carver state to [Appellant], "I need to kill the bitch if she's going to snitch." (*Id.* at 23-[2]4). [Appellant] tried to intervene on behalf of [the victim], which led to a physical altercation between [Appellant] and Carver. While the two men fought, [the victim] jumped out of the living room window to safety.

[The victim's] injuries to her head, hands, back[,] and face were photographed at the hospital. The photographs depicted serious bruises and contusions on [the victim's] face. [Appellant] was also treated in the hospital for injuries he apparently sustained while fighting Carver. The injuries included knife wounds to [Appellant's] hands and a puncture wound to his abdomen.

*Commonwealth v. Carter*, 984 A.2d 1009, 1412 MDA 2008 (Pa. Super. filed Aug. 20, 2009) (unpublished memorandum at 2-3).

On February 22, 2006, a jury convicted Appellant of two counts each of rape and indecent assault, and one count each of sexual assault, unlawful

restraint, and false imprisonment.[2] On August 4, 2006, the trial court imposed an aggregate prison term of 15-40 years. On August 20, 2009, following reinstatement of Appellant's direct appeal rights, *nunc pro tunc*, this Court affirmed Appellant's judgment of sentence. **Carter**, **supra**.

Throughout the following years, Appellant repeatedly and unsuccessfully sought PCRA relief.

On May 30, 2017, Appellant filed a *pro se* motion "filed under 42 Pa.C.S.A. § 9543.1." Motion for DNA Testing, 5/30/17. Appellant sought DNA testing of evidence collected from the crime scene and the victim's rape kit. **See generally id.** The trial court denied Appellant's motion, opining that

> the mere potential absence of Appellant's DNA is insufficient to establish a *prima facie* case of actual innocence pursuant to § 9543.1(c)(3) in light of other evidence of Appellant's guilt, namely, the credible testimony proffered by the victim at trial. **See** N.T., [2/21-22/06,] at 8-47.
>
> The victim testified that Appellant ripped her pants and underwear off her body and forcibly placed his penis in her vagina. [**Id.**] at 13-15. The victim's testimony was corroborated by photographs of her injuries taken at the hospital. **See** Commonwealth's Exhibits Numbers 3-9. Notably, the victim also testified that she was familiar with Appellant prior to the rape, as he previously made sexual advances on her that were rebuffed. [**Id.** at 39-40,] 45-46. Thus, the record establishes that the absence of Appellant's DNA is insufficient to establish a *prima facie* case of actual innocence pursuant to § 9543.1(c)(3).

---

[2] 18 Pa.C.S.A. §§ 3121(a)(1)-(2), 3126(a)(3), 3126, 2902, 2903.

Trial Court Opinion, 1/12/18, at 6 (some punctuation modified). Although Appellant filed a timely appeal, the appeal was later quashed at Appellant's request.

Following another unsuccessful PCRA petition, on June 29, 2023, Appellant filed a "Motion for New Trial" again seeking DNA testing. Motion for New Trial, 6/29/23, at 1 (unpaginated). Appellant asserted

> he did not rape the victim …. [Appellant] never had sex with the victim as the rape kit will prove [law enforcement] did not find [Appellant's] DNA. They found some but no match to [Appellant]….

*Id.* (emphasis in original). The trial court denied the motion. Trial Court Opinion and Order, 7/27/23, at 6-7. In doing so, the trial court quoted the same reasoning for denying Appellant's 2018 motion for DNA testing and stated, "there has been no material change to the facts or allegations raised by [Appellant]." *Id.* at 5. Appellant did not appeal the trial court's order.

Relevant to this appeal, on September 23, 2024, Appellant filed the instant *pro se* motion for DNA testing pursuant to 42 Pa.C.S.A. § 9543.1. In his motion, Appellant again asserted he did not rape the victim and was not present inside of the residence during the crime. Motion for DNA Testing, 9/23/24, ¶ 11. In requesting DNA testing of the evidence, Appellant averred the following:

> As previous[ly] stated, Appellant was outside of [the presence of the] victim and [] residence during [the] time of [the] actual crime. The victim does not and [did] not have, nor did the sexual assault rape kit conduct[ed] after the crime, contain my seminal fluids.

- 4 -

*Id.* ¶ 13 (punctuation and capitalization modified).

The Commonwealth opposed the motion, claiming that it was untimely filed, and that the absence of Appellant's DNA would fail to provide *prima facie* evidence of his innocence. Commonwealth's Response, 12/23/24, at 13. The Commonwealth argued,

> in the instant case, the jury convicted [Appellant] based largely upon the strength of the victim's testimony. Notably, [the victim] was familiar with [Appellant] before the rape, as he previously made sexual advances toward her that were rebuffed. ([N.T., 2/21-22/06, at] 39-40, 45-46). … [T]he Commonwealth submits that [Appellant's bald] averments of innocence are not sufficient to meet the *prima facie* standard to permit post-conviction DNA testing, especially in light of the other evidence admitted at trial.

*Id.* The Commonwealth further observed that DNA testing conducted prior to trial "did *not* conclude that [Appellant] was a match to the dried bodily secretion" collected from the victim. *Id.* (emphasis in original). Thus, the Commonwealth argued, the actual DNA test results revealed *the absence* of Appellant's DNA. *Id.*

On February 5, 2025, the trial court denied Appellant's motion. The court recognized that DNA evidence "was, in fact, presented at trial and in [Appellant's] favor[.]" Trial Court Opinion, 1/8/25, at 1. The trial court concluded that Appellant failed to meet the *prima facie* standard to permit post-conviction DNA testing. *Id.* at 10-11. Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant's *pro se* appellate brief does not comport with our Rules of Appellate Procedure. It does not include a statement of questions involved, as required by Pa.R.A.P. 2116. However, liberally construing Appellant's brief, it is clear he challenges the denial of DNA testing. *See* Appellant's Brief at 1 (unpaginated); *see also Commonwealth v. Blakeney*, 108 A.3d 739, 766 (Pa. 2014) (acknowledging that this Court may liberally construe materials filed by a *pro se* litigant). Appellant claims the trial court erred in denying his motion for DNA testing, asserting that "you will only find [Carter's] and [the victim's] DNA on the pants and panties[,] none of [Appellant's]." *Id.* at 2 (unpaginated). Appellant further claims that "the blanket taken from [] Carver's house was tested for my contact DNA and none was found. Not a hair. Explain this." *Id.* at 3 (unpaginated).[3]

_____

[3] Although Appellant previously litigated a motion for DNA testing, we decline to quash the appeal on the basis of *res judicata*.

> *Res judicata*, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. *Res judicata* applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.

*Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995) (citations omitted). While Appellant's previous motion used a similar rationale, his present motion asserted technological advancements as a basis for relief. Motion for DNA Testing, 9/23/24, at 3. In an abundance of caution, we address Appellant's issue.

Requests for post-conviction DNA testing are governed by 42 Pa.C.S.A.

§ 9543.1(a), which sets forth, *inter alia*, the requirements that an applicant

must establish to obtain requested DNA testing:

> [**(a)**]**(1)** An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.
>
> **(2)** The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.
>
> **(3)** A request for DNA testing under this section shall be by written motion and shall be filed with the clerk of courts of the judicial district where the sentence is imposed.
>
> **(4)** DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.
>
> * * *
>
> **(6)** The motion shall explain how, after review of the record of the applicant's trial, there is a reasonable possibility if the applicant is under State supervision, … that the testing would produce exculpatory evidence that would establish:

- 7 -

> **(i)** the applicant's actual innocence of the offense for which the applicant was convicted ….

42 Pa.C.S.A. § 9543.1(a)(1)-(4), (6)(i).  Section 9543.1(d) further provides that

> [t]he court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility for an applicant under State supervision, or there is no reasonable probability for an applicant not under State supervision, or after review of the record of the applicant's guilty plea, the court determines that there is no reasonable probability, that the testing would produce exculpatory evidence that:
>
> * * *
>
> **(2)** would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

*Id.* § 9543.1(d)(2).

Recently, our Supreme Court explained the statutory requirements as follows:

> The applicant is required to take certain threshold steps, such as identifying the specific evidence at issue, consenting to provide samples of bodily fluids to be used in the DNA testing, and acknowledging that his own DNA will be uploaded to law enforcement databases and could be used as evidence in other prosecutions.  The applicant further must provide a sworn statement asserting his actual innocence of the crime in question and swearing that the DNA testing is sought for the purpose of demonstrating the applicant's actual innocence.
>
> Actual innocence of the crime is what the statute primarily aims to uncover.  To that end, … **the applicant is required to present a *prima facie* case demonstrating that the identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the conviction, and that DNA testing of the specific evidence, assuming exculpatory results, would establish the applicant's actual innocence of**

**the offense for which the applicant was convicted**. If the applicant fails to make that showing, another provision of Section 9543.1 directs the court to deny the request: The court shall not order the testing if it determines that there is no reasonable possibility that the testing would produce exculpatory evidence that … would establish the applicant's actual innocence of the offense for which the applicant was convicted.

*Hardy*, 337 A.3d at 390 (emphasis added; quotation marks and footnotes omitted). As our Supreme Court observed, the words "at any time" were "a new addition to the statute in 2018." *Id.* at 408.

The *Hardy* Court recognized that

the absence of evidence is not *conclusive* evidence of absence. … The idea that "absence of evidence is not evidence of absence" should not be invoked as a totemic basis for disregarding claims of innocence or otherwise denying access to DNA testing. A more discerning inquiry into the facts and circumstances is required.

*Id.* at 422 (emphasis in original). As this Court has observed,

the quantum of evidence necessary to satisfy Section 9543.1(d)(2)(i) above and beyond the absence of the petitioner's DNA has never been explicitly defined. In this regard, [the Court is] not aware of any authority that holds or suggests that demonstration of "actual innocence" under Section 9543.1(d)(2)(i) requires a discovery of DNA from someone other than the petitioner. **Instead, the quantum of evidence necessary to satisfy Section 9543.1(d)(2)(i) above and beyond the absence of the petitioner's DNA has been, and should continue to be, determined on a case-by-case basis, as circumstances dictate.** Such circumstances might include the presence of another person's DNA, but not necessarily so. It is at least conceivable that certain circumstances or facts, in addition to or in conjunction with the absence of the petitioner's DNA in a particular location, may satisfy Section 9543.1(d)(2)(i)…

*In re Payne*, 129 A.3d 546, 559-60 (Pa. Super. 2015) (*en banc*) (emphasis added; footnotes omitted); *accord Hardy*, 337 A.3d at 421-22.  With this in mind, we turn our attention to Appellant's motion for DNA testing.

Our review of the record discloses that at trial, the parties disputed, on the record, the admissibility of the inconclusive DNA test results.  N.T., 2/21-22/06, at 49-57.  The Commonwealth sought the admission of the inconclusive DNA evidence; **Appellant objected to it.  *See id.***  Appellant did not contest his presence at the time of the rape.  Rather, he proffered, as a defense theory, that Carver coerced him into raping the victim.  *See id.* at 96 (in a dispute over DNA evidence, defense counsel stating that Appellant "is conceding *he was there, he's conceding he had intercourse with the victim*, and things regarding DNA evidence or evidence collection are really tangential to the central issues in the case…." (emphasis added)), 111 (during closing arguments, Appellant's counsel arguing, "I'll suggest to you that Carver raped that woman and used [Appellant] to do it.").  Ultimately, the parties agreed that the inconclusive DNA test result would be admitted by stipulation.  *Id.* at 56-57.

On direct appeal, Appellant unsuccessfully challenged his rape conviction, **again conceding his presence at the crime scene**, and arguing that "he was coerced and under duress from Carver during the rape."  *Carter*, 1412 MDA 2008 (unpublished memorandum at 5).

In the instant motion, Appellant now claims *he was not present at the crime scene*, and DNA testing would prove this. Motion for DNA Testing, 9/23/24, ¶ 13. The trial court rejected Appellant's claim:

[Appellant] argues that his "DNA test results (seminal fluid) were never introduced to the jury during the trial[,] … which could have invalidated [the] sentence." [Appellant] also asserts that "DNA testing has advanced significantly since 2005."

[Appellant's] ongoing and relentless attacks to the inconclusive DNA evidence that was, in fact, presented at his trial and in his favor, has been thoroughly examined and re-examined by [the trial court]. Throughout the years, there have been no additional facts presented that would justify a finding by [the trial court] that additional DNA testing should be performed. Moreover, it is abundantly clear to [the] court that [Appellant's] "facts" underlying his serial attacks to the DNA evidence have continued to change and no longer follow any logic that should warrant any further consideration by [the trial court]….

\* \* \*

… [Appellant's] allegation that he was not present during the sexual assault of the victim is belied by his defense at trial that [Carver forced Appellant to] engage[] in [] sexual intercourse with [the victim]. These two factual allegations simply cannot exist within the same realm of reality. While [the trial court] agrees with [Appellant] that the original DNA testing did not implicate him, this fact alone does not negate the findings of the jury that the victim's testimony was credible and worthy of belief, despite the DNA findings.

Trial Court Opinion, 1/8/25, at 10-11; *see also Commonwealth v. Izurieta*, 171 A.3d 803, 807 (Pa. Super. 2017) (recognizing that "[t]he uncorroborated testimony of a sexual assault victim, if believed, alone is sufficient to support

a sex offense conviction." (citation omitted)). We agree with the sound reasoning and conclusion reached by the trial court.[4] *See id.*

Upon our review of the record, we cannot conclude that DNA test results would establish Appellant's innocence. Appellant's presence at the crime scene was not disputed at trial or on direct appeal. At trial, the victim testified that she recognized Appellant; she was familiar with Appellant prior to the assault; and she identified Appellant as the man who raped her.[5] N.T., 2/21-22/06, at 12, 39-40. The jury convicted Appellant, even though DNA test results were inconclusive and did not implicate Appellant. Under these circumstances, Appellant failed to establish there is "a reasonable possibility" that "testing would produce exculpatory evidence that … would establish [his] actual innocence." *Hardy*, 337 A.3d at 390. Consequently, Appellant's claim that the trial court erred in denying his motion for DNA testing warrants no relief.

Order affirmed.

_____

[4] We disagree with the trial court's conclusion that Appellant failed to timely file his motion. *See Hardy*, 337 A.3d at 408 (recognizing the that the words "at any time" were added to Section 9543.1); Motion for DNA Testing, 9/23/24, at 3 (claiming evolving technology as a basis for Appellant's motion for DNA testing). However, our conclusion is limited to Appellant's instant motion. We make no pronouncement as to whether future motions may be timely, or whether *res judicata* bars future motions relying on the same rationale.

[5] The Commonwealth's trial exhibits (photographs of the victim's injuries) were consistent with her description of the brutal nature of the assault. *See* Commonwealth Exhibits 1-9.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/18/2025